NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

TANNER SCHRITTER, *Petitioner/Appellee*,

*v.*

LORINDA SCHRITTER, *Respondent/Appellant*.

No. 1 CA-CV 20-0399 FC
FILED 7-22-2021

Appeal from the Superior Court in Mohave County
No. S8015DO201700175
The Honorable Megan A. McCoy, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Berkshire Law Office PLLC, Tempe
By Keith Berkshire, Alexandra Sandlin
*Counsel for Petitioner/Appellee*

Horne Slaton PLLC, Scottsdale
By Sandra L. Slaton, Kristin M. Roebuck Bethell
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Chief Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**F U R U Y A**, Judge:

¶1        Appellant Lorinda Schritter ("Mother") challenges the superior court's post-decree orders modifying legal decision-making authority, parenting time, and child support, contending the court deprived her of due process by limiting her trial time. As explained below, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Father petitioned for dissolution of the parties' marriage in 2017. The parties share one minor child. Both parties resided in Kingman when Father filed his petition, but Mother later moved to Gilbert.

¶3        The superior court entered a dissolution decree in July 2018. The court awarded the parties joint legal decision-making authority with Father having presumptive decision-making authority, imposed a week on/week off parenting time schedule, and ordered Father to pay $91 in monthly child support.

¶4        In November 2019, Mother petitioned to modify legal decision-making authority, parenting time, and child support, alleging an incident during Father's parenting time, in which "the child's fingers appeared to have been chewed on near the cuticles" and further alleging the child would "los[e] four fingernails" as a result. She also alleged the child's pediatrician, Dr. Norman Saba, referred the child "to see a child psychologist for stress leading to nail biting and injury to fingertips," which Father opposed. She further alleged Father intended to unilaterally enroll the child in kindergarten in Kingman. On these bases, she requested sole legal decision-making authority and "primary parenting time." Father cross-petitioned for sole legal decision-making authority, alleging Mother had refused to cooperate with his efforts to obtain a passport for the child.

¶5        Following a hearing on January 14, 2020, the court entered temporary orders affirming the decree's joint legal decision-making authority and the week on/week off parenting time schedule and set trial for April 17, 2020. Mother requested two days for trial, but the court allotted

one day, stating that it would "extend to another day if it seems reasonable and the parties have used their time wisely." The court invited Mother to file an explanation justifying a second trial day, but she did not do so.

¶6            Four days before trial, Mother filed a motion to continue, arguing one day was not sufficient and COVID-19 restrictions would deprive her of opportunity to appear in person and present her case. The court denied her motion, finding that she still had not explained why one day was insufficient for trial. The court also affirmed it would give each side two hours and 45 minutes of trial time, which would include time for breaks and case administration. The court further stated that it would allow Mother to appear in-person for trial, but she chose not to do so.

¶7            The day before trial, Mother moved for a change of judge for cause and a change of venue, both of which were denied. When the parties appeared for trial on April 17, the court noted that these late-arriving motions had delayed the scheduled start time. It therefore set aside additional time on the morning of May 1, 2020, to complete trial.

¶8            Father rested his case-in-chief with about thirty minutes of trial time remaining on April 17. Mother's counsel, however, elected not to proceed at that time, expressing a preference to "start fresh" on May 1. In response, the court informed Mother's counsel that "8:30 to 11:00 [on May 1] would be the allocation of the rest of [Mother's] time . . . and that the Court is reserving 45 minutes" and encouraged Mother's counsel to use the remaining thirty minutes, unless counsel was "willing to stop whenever the 45 minutes for Court ruling hits on May 1st." Mother's counsel again declined to use the 30 minutes available that afternoon, and the court acquiesced after again stressing that time limits would be observed and close of testimony would occur at 11:15 a.m. on May 1. Mother's counsel responded that she would "make the most and the best use of the time."

¶9            At the start of trial on May 1, Mother's counsel told the court Dr. Saba had informed her he could not testify during the allotted trial time because of an influx of COVID-19 patients at his practice. She asked the court to allow Dr. Saba to testify "between 12:30 and 1:30," which was the court's lunch hour. The court denied Mother's request, observing that, given the late and sudden nature of the request, it did not have time or staff available to do so. The court further observed that Mother's counsel would have to seek admission of the substance of Dr. Saba's information through other witnesses. The court also admonished Mother's counsel for raising issues at the last moment multiple times during the litigation, such that it feared Mother had been working toward delaying trial.

¶10         Mother testified on May 1 until 11:23 a.m., when the following exchange took place:

> THE COURT: When we recessed early at the last setting, you promised that your presentation would be completed by 11:15 so that the Court could issue Orders.

> MS. SILK [Mother's counsel]: Okay. Well, we also took – we had a long break for that – Mr. Engan had his other hearing, and I've also had interruptions and delays because of Mr. Engan making me go through one exhibit at a time. I don't believe that my time – I've been keeping track of my time and I have not used an hour – or two-and-a-half hours.

> THE COURT: Ms. Silk, I currently am keeping track of your time. I have 17 minutes would be left if you were able to have your full amount of time.

> The Court has discussed with you at the last setting that there was a half hour available. You chose not to use it, and I have at this time given you 10 extra minutes that was not used – that was extra during the break so that Mr. Engan could conduct another court hearing.

> And so I am asking do you have 2 more minutes or is this an issue for you? Because this is your time and the Court does trust you to use it wisely.

> MS. SILK: And I believe that I have used my court time wisely. I think I've been very diligent about it. I had two-and-a-half hours and I expected to use two-and-a-half hours. I have not used my full two-and-a-half hours.

> And I also do recall – and I'm not asking for a delay, but I also recall the Court saying when they set this hearing and I had asked for two days, that the Court said that if we use our time wisely, that there could be extra time.

> So does the Court intend on ruling today?

> [THE COURT]: Ms. Silk, there has been no request for further time that has given me a substantive understanding of what further needs to be given. The Court does not find that the time today has been unsubstantial.

The Court finds that the time that has been allotted to this trial is absolutely appropriate based on the information that has been provided this Court.

And so I am asking if you need 2 minutes to complete your testimony prior to the Court ending things or if this is a good stopping point?

MS. SILK: Well, I want to use all the time that I absolutely have.

THE COURT: And, Ms. Silk, at the last setting you agreed 11:15 would be the end of time and that there was no need for the half hour that we recessed early.

And so, again, I did not agree to recessing that half hour and then going past 11:15. I have given you the 10 minutes of extra time that was taken by the break.

And so if there is a minute or 2 that you would like to wrap up, I am willing to allot such to you; however, the agreement was that you would be completed by 11:15 and it is now 11:26.

MS. SILK: I think the agreement was I would be completed within the two-and-a-half hours, but I will just ask some final questions. I disagree with the recitation, but I'm gonna ask some final questions.

¶11 Following a few additional questions to Mother, the court entered orders granting Father sole legal decision-making authority. As relevant to this appeal, the court relied in part on evidence that Mother had been "photographing the child's anus over a series of years" and Father's "testimony that the child tells [him] that he's not supposed to tell his father about things with [Mother], coupled with a four-year-old saying 'snitches get stitches.'" The court expressed "grave concern . . . that the young child is being trained to be photographed by a trusted adult in a state of undress" and stated that "[t]he further grooming of teaching a child to keep secrets grooms the child to be vulnerable to abuse."

¶12 The court also modified the parenting time schedule, ruling that the child would primarily reside with Father during the school year, with Mother receiving parenting time every other weekend. The court also ordered Mother to pay $148 in monthly child support and entered a signed final judgment implementing these modifications.

¶13 Mother moved to alter or amend the judgment under Arizona Rule of Family Law Procedure ("ARFLP") 83, contending the court (1) improperly limited her trial time, (2) refused to grant additional trial time to hear testimony from Dr. Saba, and (3) declined to "review [her] exhibits that were listed in the Joint Pretrial Statement that were not objected to by [Father]." Mother also contended there was an "appearance of impropriety" based on these issues and the court's findings regarding her photographs of the child.

¶14 The court denied Mother's motion. Mother timely appealed that ruling and the underlying final judgment. We have jurisdiction pursuant Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A) and -2101(A)(2).

## DISCUSSION

### I. Due Process Rights Related to Dr. Saba's Testimony

¶15 Mother first contends the superior court violated her due process rights by not allowing Dr. Saba to testify during the lunch hour on the second day of trial. Generally, procedural due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. *Comeau v. Ariz. State Bd. of Dental Exam'rs*, 196 Ariz. 102, 106–07, ¶ 20 (App. 1999) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). We review whether the court afforded Mother due process *de novo. See Jeff D. v. Dep't of Child Safety*, 239 Ariz. 205, 207, ¶ 6 (App. 2016). "Due process errors require reversal only if a party is thereby prejudiced." *Volk v. Brame*, 235 Ariz. 462, 470, ¶ 26 (App. 2014).

¶16 A party seeking a trial continuance based on witness unavailability must show:

(1) why the witness' testimony is material;

(2) when the party learned of his or her unavailability;

(3) the party's diligence and efforts in attempting to obtain the witness' testimony; and

(4) the postponement is for good cause and not delay.

ARFLP 34(a). Mother contends Dr. Saba's testimony was material because he would have testified "that the child needed treatment by a child psychologist" and would have "rebut[ted] Father's testimony that the . . .

child was being overtreated by Mother." But Mother testified about Dr. Saba's recommendation at trial, and Father did not dispute that Dr. Saba made such a recommendation.

**¶17**      Turning to the other three factors, Mother told the court she learned of Dr. Saba's unavailability the night before the second day of trial. There is no record evidence to suggest she took any steps to secure Dr. Saba's attendance at trial. *See Emps. Mut. Liab. Ins. Co. of Wis. v. Indust. Comm'n*, 15 Ariz. App. 590, 593 (1971) ("[T]he witness whom a party desires to examine must be subpoenaed by that party in order to preserve the record based upon the inability to examine the potential witness whom he desires to examine."). Moreover, she does not challenge the court's finding that her "claim that [Dr. Saba] was suddenly and unexpectedly unable to make a simple phone call to testify" was not credible.

**¶18**      Mother cites *Volk* for the proposition that parties must receive "a reasonable opportunity to present testimony whenever resolution of a material contested issue hinges on credibility." *Volk*, 235 Ariz. at 466, ¶ 14. There, however, the superior court allocated just 15 minutes for a hearing and refused to hear *any* testimony regarding the parties' child support dispute, instead "indicat[ing] that it would assess the parties' credibility based solely on the disputed documents already submitted." *Id*. at 466, ¶¶ 4, 11. We determined that the court could not "rely on a 'paper view' to decide the petition" because there was "no adversarial check on the quality of the information that Mother provided to the court and upon which it relied to modify Father's child support obligation." *Id*. at 467–69, ¶¶ 14, 24.

**¶19**      Here, by contrast, over the course of more than two hours, Mother testified regarding multiple instances where she sought medical care for the child, including from Dr. Saba, and she chose not to cross-examine Father or any other witness. Moreover, the court found that the relevant statutory factor addressing the child's mental and physical health did not favor either party. *See* A.R.S. § 25-403(A)(5).

**¶20**      Mother cites *Hays v. Gama*, 205 Ariz. 99 (2003), for the proposition that the court owes a duty "to hear all competent evidence which may be offered" in child custody proceedings. *Id*. at 103, ¶ 21 (quoting *Johnson v. Johnson*, 64 Ariz. 368, 370 (1946)). *Hays* involved reversal of two contempt sanctions that excluded a therapeutic counselor's testimony. *Id*. at 103, ¶¶ 21–22. Here, the court did not hold Mother in contempt; it instead declined Mother's request to delay the proceedings based on Dr. Saba's sudden unavailability, and the parties were permitted to discuss Dr. Saba's recommendations. *Hays*, therefore, is distinguishable.

## II.     Mother's Trial Time

**¶21**          Mother further argues the court denied her due process by limiting her case-in-chief to 2 hours and 11 minutes of the originally allotted 2 hours and 45 minutes. "Procedural due process . . . requires nothing more than an adequate opportunity to fully present factual and legal claims." *Kessen v. Stewart*, 195 Ariz. 488, 492, ¶ 16 (App. 1999).

**¶22**          As noted above, Mother declined to use thirty minutes available at the end of the April 17th trial date, even though the court encouraged her to do so. Furthermore, she agreed at that time to conclude her presentation of evidence at 11:15 a.m. on May 1. On May 1, however, the court allowed her to present evidence until 11:26 a.m.

**¶23**          Mother also fails to identify any specific evidence she would have presented, had she been given additional time. *See In re Marriage of Dorman*, 198 Ariz. 298, 303, ¶ 13 (App. 2000). She instead generally asserts she could not "present her case regarding the child's need for psychological assessment," "fully rebut Father's testimony and evidence," or "call[] any of her corroborating witnesses or recall[] Father in her own case for cross-examination purposes." But she does not challenge the court's finding that she "engaged in intentional delay tactics throughout the case, and throughout the trial." As such, she does not show that she suffered unreasonable prejudice. *See Volk*, 235 Ariz. at 469, ¶ 22 (explaining the superior court need not "indulge inefficient use of time by parties or their counsel."); *Cnty. of La Paz v. Yakima Compost Co.*, 224 Ariz. 590, 598, ¶ 12 (App. 2010) (rejecting due process arguments because party "fail[ed] to demonstrate how it was unreasonably prejudiced by the deprivation"). The court did not err in limiting Mother's May 1 trial time consistent with her counsel's earlier agreement. *See Backstrand v. Backstrand*, 250 Ariz. 339, 347, ¶¶ 31–32 (App. 2020).

## III.     Award of Sole Legal Decision-Making Authority to Father

**¶24**          Mother challenges several of the court's findings supporting its grant of sole legal decision-making authority to Father. We review rulings on a petition to modify for an abuse of discretion. *In re Marriage of Priessman*, 228 Ariz. 336, 340, ¶ 12 (App. 2011). We also review legal decision-making authority and parenting time orders for an abuse of discretion. *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019). We accept the court's findings of fact unless they are clearly erroneous. *Id*.

## A.     The Record Supports the Court's Photography Finding.

¶25     Mother first challenges the court's finding that the photographs she took of the child's anus over multiple years constituted "grooming."

¶26     She testified at trial that the child did not know she was taking the pictures and introduced a series of text messages in which she accused Father of not wiping the child properly. She also contends on appeal that Father presented no evidence to suggest that the photographs harmed the child in any way. But Father testified that he believed the child could "grow up thinking that that's a normal routine and that someone who loves him, it's okay for them to do that to him and then never talk about it or say anything about it." He also testified that he had talked with the child about "good touches" and "bad touches" and that the photographs constituted "bad touches." He further testified that he asked Mother to stop taking the pictures, but that she refused. And while he testified that he did not believe Mother intended to groom the child, he believed that taking more than sixty pictures suggested Mother had developed a routine in taking them. The court did not abuse its discretion in weighing the parties' conflicting testimony. *See Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009) (citation omitted) ("Our duty on review does not include re-weighing conflicting evidence or redetermining the preponderance of the evidence.").

¶27     Mother also argues that Father presented no expert testimony on this issue, but she does not explain why expert testimony would have been necessary. Moreover, she did not make this argument to the court; we therefore do not consider it further. *See City of Tempe v. Fleming*, 168 Ariz. 454, 456 (App. 1991) ("As a rule, arguments not made at the trial court cannot be asserted on appeal.").

## B.     The Record Supports the Court's "Long Goodbyes" Finding.

¶28     Mother next challenges the court's finding that she "has and will continue to foster parental alienation against [Father] due to her 'long goodbyes' and her actions to place a burden on [the child] in talking about court either to or in front of [the child]."

¶29     Father testified regarding multiple exchanges where Mother "act[ed] like [the child was] already upset before she starts – when she starts telling him 'Oh, it's gonna be okay, buddy. I'll see you soon.'" He testified regarding one exchange where Mother sat with the child in the middle of the floor at a restaurant coddling him and "telling him it was going to be

okay and such" before the child left with Father. Father also introduced a recording in which the child asked him if he was "going to go to court" to "see who's the best . . . the mom or the dad" and to "win money" and that he had been told by "[e]verybody at Phoenix" that Father had to go to court. Father added that he had gone out of his way not to discuss the litigation with the child.

¶30        Mother disputed Father's testimony as to these issues, testifying that she typically tried to leave exchanges as quickly as possible and presenting audio recordings that she says showed the child would get upset when she tried to leave. She also denied that the child's reference to "[e]verybody in Phoenix" was to her family, speculating that the child could have been referring to Father's wife's family members who also live in the Phoenix area. The court did not abuse its discretion in weighing the parties' conflicting testimony. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019) ("On appeal, we do not reweigh the evidence but defer to the court's determinations of witness credibility and the weight given to conflicting evidence.").

### C.     The Court Did Not Make Contradictory Findings Regarding Mother's Likelihood of Compliance with Future Court Orders.

¶31        Mother argues the court made contradictory findings regarding her ability to follow court orders, citing the following excerpt from the court's order:

> [W]hile there is significant evidence that [Mother] will not comply with court orders, and has impeded at least one transfer without appropriate communication, the evidence does show that [she] has substantially complied with the parenting time orders.

The court apparently was referring to its analysis addressing which parent would be more likely to allow the child to have frequent, meaningful, and continuing contact with the other parent:

> Since the Court orders have divided [the child's] time with the parties equally, it appears that Mother has substantially complied with the orders and allowed parenting time to occur as the Court ordered.
>
> . . .

As was seen previously, it seems clear that Mother still wants to control how Father parents and shows overall a low likelihood of her allowing frequent, meaningful, or continuing contact with Father unless Court ordered.

*See* A.R.S. § 25-403(A)(6).

**¶32** Father testified that Mother did not acknowledge or respect his presumptive legal decision-making authority and was unwilling to come to an agreement on most issues. He also testified that she did not change her position if he did not agree with her proposed approach. Indeed, as an example, the court previously held Mother in contempt for not cooperating with Father's efforts to obtain a passport for the child. *See Sebestyen v. Sebestyen*, 250 Ariz. 537, 540, ¶ 9 (App. 2021) ("This Court will . . . defer to the trial court's factual findings and uphold its ruling if any reasonable evidence supports it."). The record therefore supports the court's findings.

## IV. Attorneys' Fees on Appeal

**¶33** Father requests his attorney fees and costs incurred in this appeal under A.R.S. § 25-324(A). Having considered the most recent financial information in the record and the parties' positions on appeal, we decline to award fees. Father may recover his taxable costs upon compliance with ARCAP 21.

## CONCLUSION

**¶34** We affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA