333 P.3d 789

**Kenneth A. VOLK, Petitioner,**

v.

**The Honorable Veronica W. BRAME, Commissioner of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Commissioner,**

**Annalisa Alvrus, State of Arizona ex rel. Arizona Department of Economic Security (Annalisa B. Alvrus), Real Parties in Interest.**

**No. 1 CA–SA 14–0079.**

Court of Appeals of Arizona, Division 1.

Aug. 28, 2014.

Berkshire Law Office, PLLC By Keith Berkshire, Maxwell Mahoney, Phoenix, Counsel for Petitioner.

Arizona Attorney General's Office By Carol A. Salvati, Phoenix, Counsel for Real Party in Interest State of Arizona.

Judge PETER B. SWANN delivered the opinion of the Court, in which Presiding Judge JOHN C. GEMMILL and Judge PATRICIA A. OROZCO joined.

## OPINION

SWANN, Judge.

¶ 1 This case requires us to reaffirm the importance of due process in family court. Kenneth A. Volk ("Father") petitions for special action relief from the family court's order modifying his child support obligation. He contends that the court denied him a meaningful opportunity to be heard and to confront adverse evidence during the hearing from which the order was issued. We agree. We hold that when the resolution of an issue before the court requires an assessment of credibility, the court must afford the parties an opportunity to present

1. The Arizona Child Support Guidelines provide a "Simplified Procedure" for a parent who can show that application of the Guidelines would result in a child support order that varies 15% or more from the existing order. A.R.S. § 25–320

sworn oral testimony, and may not rely solely on avowals of counsel. We further hold that a court abuses its discretion when it adheres to rigid time limits that do not permit adequate opportunity for efficient direct testimony and cross-examination. Accordingly, we accept jurisdiction, vacate the order modifying Father's child support obligation, and remand for a new hearing consistent with this opinion.

## JURISDICTION

¶ 2 It is fundamental to due process that a court provide a forum for witness testimony, and that it refrain from resolving matters of credibility on documents alone. We accept special action jurisdiction in this case because of the need to correct an error revealing a breakdown of that basic function. *See King v. Superior Court (Bauer)*, 138 Ariz. 147, 149–50, 673 P.2d 787, 789–90 (1983) ("[Special action] jurisdiction is frequently accepted when under no rule of law can a trial court's actions be justified."); *State v. Bernini*, 230 Ariz. 223, 225, ¶ 6, 282 P.3d 424, 426 (App.2012) ("Special action relief is appropriate if the respondent judge has abused her discretion by committing an error of law or proceeding in excess of her legal authority."); *Amos v. Bowen*, 143 Ariz. 324, 327, 693 P.2d 979, 982 (App.1984) ("Special action jurisdiction may be assumed to correct a plain and obvious error committed by the trial court."). Failures of due process are inherently of statewide importance. When due process succumbs to the demands of expedience created in high-volume settings such as family court, the risk that the error will recur is real and special action jurisdiction is appropriately exercised.

## FACTS AND PROCEDURAL HISTORY

¶ 3 Father filed a Request to Modify Child Support "Simplified Procedure," seeking a reduction of his monthly child support obligation from $548.89 to $222.09.[1] Annalisa Alvrus ("Mother") opposed Father's request,

app. § 24(B) ("Guidelines"); *see also* ARFLP 91(B)(2)(b). If the parent receiving service timely requests a hearing, the court must conduct one before it can modify the existing order. Guidelines § 24(B).

arguing that the court should instead increase Father's monthly obligation to $1,796 and requesting a hearing at which she could "present evidence to establish he[r] contentions."

¶ 4 The court granted Mother's request for a hearing and allotted 15 minutes for the proceeding. The court ordered the parties to exchange financial information before the hearing, including financial affidavits, tax returns, pay stubs, evidence of other income such as trust disbursements, and proof of child-care expenses.[2] At the time first set for the hearing, Father asked the court to allot more time to present witnesses and exhibits concerning his income from self-employment. The court denied Father's request, but continued the hearing to allow the parties to resolve parenting time issues pending before a different judge.

¶ 5 Mother then filed a Motion to Expand Time for Evidentiary Hearing, contending that the time allotted would not allow for adequate testimony and review of the evidence. Father objected to Mother's motion, arguing that he had been preparing for a hearing within the scheduled timeframe because the court had already denied his request for additional time. Father further argued that his "exhibits [would] be fully sufficient for the court to render an adequate determination of the issues at hand" and that he would "be prepared to testify regarding his exhibits within the time allocated by [the] Court." Mother's reply then joined in Father's original request for additional time, but the court denied her motion.

¶ 6 At the outset of the continued hearing, Mother's counsel again objected that 15 minutes would be insufficient to review the evidence that Father intended to present, specifically raising procedural due process as a ground. The court overruled the objection, explaining that on matters set on Tuesdays and Wednesdays: "we don't have the opportunity to have a longer hearing. We tell you what documents you have to present to the Court in your order to appear before the Court. Those are the documents that we usually look at." The remainder of the hear-

ing focused on the court's effort to identify and organize exhibits relevant to the parties' dispute over Father's income and parenting time.

¶ 7 Father's counsel argued that Father's income for child support purposes was $1,432 a month, based on his tax returns "[a]nd all of his paperwork and everything that [he] provided to [the court], ... [including] every single copy of every single bill, of every single debt, of every single charge associated with his self-employment."

¶ 8 Mother's counsel in turn asserted that Father's income ranged from $8,762 a month "on the low side" to $9,521 "on the high side," based on his review of recent business account statements and his own determination of allowable deductions for various expenses reflected in receipts, profit-and-loss statements and payroll records obtained through disclosure. Mother's counsel also alleged that Father received income from a trust. The difference between Mother's "high side" and "low side" calculations was never explained.

¶ 9 As the hearing proceeded the court asked the parties to submit the documents that they had relied on for their respective income calculations. Seated at counsel table, Father attempted to dispute the accuracy of the bank account statements on which Mother's counsel based his calculations by suggesting that they did not accurately reflect the course of his business. The court responded: "Okay. I need the bank statements from [Mother], and then anything you want to present on your side about those ... you can present them." But the court never allowed Father to explain what his business was—much less how it operates or the details of its finances. In fact, he was never allowed to testify at all. Instead, the court repeatedly interrupted Father's attempts to explain his view of the submitted exhibits, and insisted that all the parties could do was to provide the specific documents that the court had requested.

¶ 10 When Father's counsel voiced concern over the accuracy of a demonstrative chart

---

**2.** Consistent with the state's role in child support proceedings under Title IV–D of the Social Security Act, 42 U.S.C. §§ 651–669b, the attorney general's office also participated in the hearing.

that Mother's counsel offered as evidence of Father's income, the court interrupted: "This is how this is going to work. [Mother's counsel is] going to present ... his information, whether it's accurate or not. You're going to present me your information that says it's not true. I'm going to look at both of them, and then I'm going to make a decision." The court added: "I just need for you two to give me the documents.... You don't have to tell me what you presented. Just give it to the Clerk, [and] have her ... mark it because I'm going to look at it."

¶ 11 At the conclusion of the hearing, the court again denied Father an opportunity to clarify the evidence, and indicated that it would assess the parties' credibility based solely on the disputed documents already submitted without taking any sworn testimony or additional evidence:

> [FATHER'S COUNSEL]: ... And then one last thing. My client did want to— because if the Court's just going to review, he would like to just inform the Court briefly what documents he's provided to the Court.
>
> THE COURT: No, ma'am. No, ma'am. I have the documents that I've asked for, and I'm not taking any additional documents.
>
> [FATHER]: Your Honor?
>
> THE COURT: No.
>
> [FATHER]: One last statement?
>
> THE COURT: No, sir, no last statement. I'm going to look at the files.
>
> [FATHER'S COUNSEL]: Okay.
>
> THE COURT: I'm going to look at all the paperwork you gave me, and I'm going to make a decision. I'm going to look at what orders are in place, when the orders were dated ... and go forth from that. Okay? *I'm going to look at the total picture of this case ... from my paper view and what you have given me. Okay. Because the argument is that, you know, [Mother] said things, and [Father] says no, it's not true. I'm going to look at the paper and make a ruling.* This will be done by minute entry under advisement.

(Emphasis added.) The hearing lasted 31 minutes, during which the court admitted 23 of Father's exhibits and 11 of Mother's exhibits, including the demonstrative chart containing the calculation that Mother's counsel prepared and explained at length without supporting testimony.

¶ 12 The court issued a written decision, in which it stated that it had "heard testimony from Father and Mother, the argument of the attorneys, reviewed the legal file, the voluminous exhibits, the documentation submitted regarding Father's Trust account, and A.R.S. § 25–320 and the Child Support Guidelines." The court issued the following finding:

> Despite the voluminous receipts and documents, *they do not add up to $1,431.99 for Father's income.* The deposits for the business are over $174,000.00; and the Court finds some business expenses are problematic. The business (which is out of the home) and personal expenses are combined.
>
> . . . .
>
> THE COURT FINDS Father receives money from both his business and the trust account.
>
> THE COURT FURTHER FINDS income for Father is $9,521.00 per month.

¶ 13 Based on those findings, the court concluded that Mother's "high side" income calculation was correct to the penny and ordered Father to pay $1,034 per month in child support, and later added $400 per month to cover child support arrears. This special action followed.

## DISCUSSION

### I. CONTESTED ISSUES OF CREDIBILITY MUST BE DECIDED WITH THE AID OF SWORN WITNESS TESTIMONY.

¶ 14 We begin with the fundamental proposition that due process requires the court to allow parties a reasonable opportunity to present testimony whenever resolution of a material contested issue hinges on credibility. Here, the court recognized that credibility was central to the issue before it but expressly rejected the parties' efforts to testify, choosing instead to rely on a "paper

view" to decide the petition. Such an approach categorically violates due process.

¶ 15 In *Goldberg v. Kelly*, the United States Supreme Court held:

[W]ritten submissions do not afford the flexibility of oral presentations; they do not permit the recipient to mold his argument to the issues the decision maker appears to regard as important. *Particularly where credibility and veracity are at issue ... written submissions are a wholly unsatisfactory basis for decision.... Therefore a recipient must be allowed to state his position orally.*

397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (emphasis added); *see also Deuel v. Ariz. State Sch. for Deaf & Blind,* 165 Ariz. 524, 527, 799 P.2d 865, 868 (App.1990) (due process requires the court to provide an "opportunity to be heard *in person*" to employees wishing to contest termination from public employment (emphasis added) (citation omitted)).

¶ 16 Though *Goldberg* arose in the benefits-eligibility context, its holding goes to the essence of the courts' function and it applies with equal force in all judicial proceedings. In *Pridgeon v. Superior Court (LaMarca)*, a custody-modification case, our supreme court held: "If the affidavits are directly in opposition upon any substantial and crucial fact relevant to the grounds for modification, the court may not conduct a 'trial by affidavit', attempting to weigh the credibility of the opposing statements. In such a case, the court must hold a hearing." 134 Ariz. 177, 181, 655 P.2d 1, 5 (1982); *cf. Orme Sch. v. Reeves,* 166 Ariz. 301, 311, 802 P.2d 1000, 1010 (1990) (court may not grant summary judgment if doing so would require it to assess "the credibility of witnesses with differing versions of material facts, ... weigh the quality of documentary or other evidence, ... [or] choose among competing or conflicting inferences"); *Ong Hing v. Thurston,* 101 Ariz. 92, 100, 416 P.2d 416, 424 (1966) (court errs by relying solely on "the testimony of others and documentary evidence in the case file to ascertain if an act of contempt ha[s] occurred," because "whenever there is doubt as to the character of the alleged contempt, ... justice is better served by giving an alleged contemnor his day in court rather than summarily holding him in contempt").

¶ 17 Our analysis is informed by the reasoning of other courts that have concluded that trial courts cannot properly assess credibility without allowing the parties an opportunity to present oral testimony. In *Carvalho v. Carvalho,* the Alaska Supreme Court vacated a judgment for child support arrears issued after a hearing that consisted entirely of the attorneys' oral argument and references to previously filed affidavits and memoranda. 838 P.2d 259, 259–60, 263 (Alaska 1992). Although the attorney for the father attempted to present evidence on disputed issues and informed the trial court that the father was available to testify, the trial court refused to take additional evidence or testimony. *Id.* at 260–61, 263. On appeal, the court "recognize[d] that in a proceeding to collect past due child support some procedural safeguards are reasonably eased to ensure that the child's welfare is protected," but nevertheless held that "the trial court's refusal to admit [the father]'s testimony or take other evidence at the hearing deprived [the father] of a meaningful opportunity to be heard." *Id.* at 263. The court reasoned that the case "clearly involved *contested facts* ... [and the father]'s only opportunity to present *live* testimony or to cross-examine [the mother] came at the hearing." *Id.* (emphases added).

¶ 18 Likewise, the court in *Garzon v. D.C. Comm'n on Human Rights* reversed an administrative tribunal's decision because the tribunal had relied solely on documentary evidence to make credibility findings. 578 A.2d 1134, 1135, 1140–41 (D.C.1990). The court concluded that "[i]mplicit in these [credibility] findings is a direct conflict among the factual accounts related by [the parties]" and "[t]he [tribunal] was not in a position to make such credibility findings because the affidavits ... and the unsworn correspondence ... provided insufficient data for resolving their conflicting stories." *Id.* at 1140. Considering the documentary evidence provided by the parties "without accompanying testimony at an evidentiary hearing, the [tribunal] had no reliable basis for assessing [the parties'] credibility; the

documents, sworn and unsworn, telling different stories, lacked demeanor evidence or other indicia of truthfulness essential to perceiving what really happened in this case." *Id.* at 1141.[3]

## II. TIME LIMITS VIOLATE DUE PROCESS WHEN THEY PREVENT A MEANINGFUL OPPORTUNITY TO BE HEARD AND TO CONFRONT ADVERSE EVIDENCE.

■ ¶ 19 The idea that witness testimony is essential to the resolution of disputed facts is not novel. But unless that principle is kept squarely in mind, the crush of busy caseloads can lead to a creeping perception that full evidentiary presentations are neither warranted nor possible in seemingly routine matters on high-volume calendars. Procedural due process, however, requires the court to afford litigants adequate time to present their evidence.

■ ¶ 20 We recognize that the family court enjoys broad discretion to "impose reasonable time limits on all proceedings or portions thereof and [to] limit the time to scheduled time." ARFLP 22(1); *see also* Ariz. R. Evid. 611, cmt. to 2012 amendment; *Findlay v. Lewis,* 172 Ariz. 343, 346, 837 P.2d 145, 148 (1992) ("A trial court has broad discretion over the management of its docket. Appellate courts do not substitute their judgment for that of the trial court in the day-to-day management of cases."). But the court's discretion is not limitless and cannot be exercised unreasonably. The court must afford the parties "an opportunity to be heard at a meaningful time and in a meaningful manner" before it modifies an order of child support. *See Curtis v. Richardson,* 212 Ariz.

308, 312, ¶ 16, 131 P.3d 480, 484 (App.2006). "A trial court errs if it modifies child support without ... allowing the parties to gather and present their evidence." *Heidbreder v. Heidbreder,* 230 Ariz. 377, 381, ¶ 14, 284 P.3d 888, 892 (App.2012); *see also Cook v. Losnegard,* 228 Ariz. 202, 206, ¶¶ 19–20, 265 P.3d 384, 388 (App.2011) (vacating order modifying child support in part because trial court failed to receive or consider evidence, and directing court to consider such evidence on remand).

■ ¶ 21 Though the court may impose time limits that appear reasonable in advance of a proceeding, those limits become unreasonable if they prove insufficient to allow a substantive hearing. If, during the progress of a scheduled hearing, it becomes apparent that the court lacks sufficient time to receive adequate testimony, then the court must allow reasonable additional time or continue the hearing to permit it to perform its essential tasks.[4] *See Goldberg,* 397 U.S. at 268–69, 90 S.Ct. 1011 ("The opportunity to be heard must be tailored to the capacities and circumstances of those who are to be heard."); *Brown v. U.S. Fid. & Guar. Co.,* 194 Ariz. 85, 91, ¶ 29, 977 P.2d 807, 813 (App.1998) (time limits predetermined by the court "must be reasonable under the circumstances ... [and] should be sufficiently flexible to allow adjustment during [the hearing]"). When the court allows *no* time to hear testimony, or when the time available for each necessary witness does not allow for meaningful direct testimony and efficient but adequate cross-examination, the court violates the parties' due process rights.

---

**3.** Other cases from around the country echo the same reasoning. *See, e.g., Oshodi v. Holder,* 729 F.3d 883, 889 (9th Cir.2013) ("In any contested administrative hearing, admission of a party's testimony is particularly essential to a full and fair hearing where credibility is a determinative factor, as it was here."); *Nowacki v. Nowacki,* 90 A.D.2d 795, 455 N.Y.S.2d 406, 407 (1982) ("[T]he Family Court abused its discretion in making a determination as to the amount of support required based merely upon the unsworn statements of the wife's attorney and unverified financial data sheets, rather than the wife's personal testimony supported by appropriate documentary evidence of her expenses and outstanding accounts.").

**4.** In this case, it appears that the court felt constrained by the nature of its Tuesday and Wednesday calendars to limit the entire proceeding to a period of minutes despite the large quantity of evidence that required review. Whatever procedures the court adopts to organize and manage busy calendars, however, it can never lose sight of its fundamental obligation to afford due process to all parties. In some cases, this requirement will trump uniform case-management schemes.

¶ 22 By holding that the court remain sufficiently flexible in its allotment of time to preserve due process, we do not suggest that the court must indulge inefficient use of time by parties or their counsel. The determination of when additional time is necessary is normally committed to the discretion of the trial court. Here, however, despite the trial court's written statement that it had considered the testimony of both parties, it received no testimony at all. The transcript and video recording of the hearing reveal that no witnesses were sworn, no witnesses were called or examined, and the court summarily rejected the parties' polite attempts to offer explanatory comments.[5] The court's insistence that Father submit documents only—and not testify about those documents—violated his right to present his evidence.[6]

¶ 23 The fact that counsel were given some limited opportunity to outline their respective views of the facts did not remedy the problem. The practice of requiring presentation by avowal is no more effective a means of affording due process than deciding a case based on competing stacks of paper. While parties may stipulate to proceed in this manner, the court need not accept such a stipulation and should never expressly or impliedly force litigants to surrender their right to testify. And even when the parties stipulate to avowals, caution is appropriate because the court may be left without the means to resolve conflicts in those avowals.

¶ 24 "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg*, 397 U.S. at 269, 90 S.Ct. 1011; *see*

also *Obersteiner v. Indus. Comm'n*, 161 Ariz. 547, 549, 779 P.2d 1286, 1288 (App.1989) ("The right to cross-examination is fundamental and attaches when ... any testamentary or documentary evidence [is received]."). By limiting Father's opportunity to confront Mother's evidence to the submission of his own exhibits, the court denied Father his due process rights. And when counsel proceed by avowal, cross-examination cannot occur—the finder of fact is left merely to consider argument, not evidence. Here, there was no adversarial check on the quality of the information that Mother provided to the court and upon which it relied to modify Father's child support obligation. *See Am.–Arab Anti–Discrimination Comm. v. Reno*, 70 F.3d 1045, 1069 (9th Cir.1995); *see also Castro v. Castro*, 31 Conn.App. 761, 627 A.2d 452, 457 (1993) ("Where a party is not afforded an opportunity to subject the factual determinations underlying the trial court's decision to the crucible of meaningful adversarial testing, an order cannot be sustained." (citation omitted) (internal quotation marks omitted)).

¶ 25 The court adopted Mother's counsel's "high side" calculation in its entirety. Yet its summary findings—that his receipts "do not add up to $1,431.99 for Father's income" and that "some business expenses are problematic"—do not show that the court's decision was based on an informed review of the evidence. It may well be the case that Father understated his income and overstated his deductions. But neither we nor the trial court have any means of quantifying any such error based on this record, because Father never had the chance to explain his view of the evidence. Calculation of the in-

---

5. The discrepancy between the minute entry and the transcript on these points is a serious matter. We have therefore reviewed the video recording of the hearing to ensure that our analysis is not based on a flawed transcription.

6. We reject Mother's contention that Father failed to raise his due process argument in the court below. Father in fact made several calm attempts during the hearing to clarify his exhibits and confront Mother's evidence, even after the court refused to entertain his requests and told the parties to "settle down." Though Father did not object with the "magic words" of due process, he implicitly raised the same arguments

below that he now presents on special action and therefore adequately preserved the issue for our review. *See State v. Martinez*, 172 Ariz. 437, 440, 837 P.2d 1172, 1175 (App.1992). Even so, we note that "[a] constitutional issue may be raised and addressed for the first time on appeal, particularly when, as here, the issue is of statewide importance, is raised in the context of a fully developed record, does not turn on resolution of disputed facts, and has been fully briefed by the parties." *Larsen v. Nissan Motor Corp. in U.S.A.*, 194 Ariz. 142, 147, ¶ 12, 978 P.2d 119, 124 (App.1998).

come of a self-employed individual can be a difficult and tedious task, but it is not an all-or-nothing choice between the positions taken by adverse parties. By rejecting Father's tax returns in their entirety and adopting counsel's estimate, the court leaves the clear impression that avowals, not evidence, formed the basis of its decision.

¶ 26 Without allowing Father an opportunity to explain his own evidence and dispute Mother's evidence, there is a grave risk that the court erroneously determined his income. Yet the court ordered Father to pay child support and arrears in an amount that would, in the year after the hearing, equal nearly the entire income reported on his tax return for the year preceding the hearing. This is not a minor matter—if Father fails to comply with that order, he is subject to potential incarceration. *See* A.R.S. §§ 25–502(I) (court has power to issue child support arrest warrant and to find a party in contempt of court, requiring payment to secure release from custody or to purge the contempt), –508(A) (child support orders are enforceable by any "form of relief provided by law as an enforcement remedy for civil judgments"), –509(A) (attorney general may initiate or intervene in an action to enforce the duty of support by all means available, including all civil and criminal remedies provided by law). "The interest in securing ... the freedom from bodily restraint lies at the core of the liberty protected by the Due Process Clause." *Turner v. Rogers*, —— U.S. ——, 131 S.Ct. 2507, 2518, 180 L.Ed.2d 452 (2011) (citation omitted) (internal quotation marks omitted). "Given the importance of the interest at stake, it is obviously important to assure accurate decisionmaking in respect to the key 'ability to pay' question." *Id.* Due process errors require reversal only if a party is thereby prejudiced. *County of La Paz v. Yakima Compost Co.*, 224 Ariz. 590, 598, ¶ 12, 233 P.3d 1169, 1177 (App.2010). Here, there can be no question that Father was prejudiced by the court's due process violation.

## CONCLUSION

¶ 27 For the reasons set forth above, we accept jurisdiction, vacate the order modifying Father's child support obligation, and remand for a new hearing consistent with this opinion.