NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

MARIA LUISA AGUINIGA, *Petitioner/Appellee*,

*v.*

MIGUEL AGUINIGA, *Respondent/Appellant*.

No. 1 CA-CV 21-0221 FC
FILED 2-24-2022

Appeal from the Superior Court in Maricopa County
No. FC2014-071832
The Honorable Joseph Shayne Kiefer, Judge

**AFFIRMED IN PART; VACATED IN PART AND REMANDED**

COUNSEL

Maria Luisa Aguiniga, Buckeye
*Petitioner/Appellee*

Law Offices of Pedro A. Simpson, PLLC, Gilbert
By Pedro A. Simpson
*Counsel for Respondent/Appellant*

## MEMORANDUM DECISION

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Michael J. Brown joined.

**C R U Z**, Judge:

¶1        Miguel Aguiniga ("Husband") and Maria Luisa Aguiniga ("Wife") filed competing post-decree petitions for contempt and to enforce the dissolution decree. Husband appeals the rulings on those petitions. He also appeals the denial of his motion to alter or amend, alternatively, for relief from those rulings, and seeks to appeal from a ruling finding him in contempt. We lack jurisdiction to consider the denial of the motion and the contempt ruling. For the reasons stated below, we vacate the ruling for temporary spousal maintenance arrearages and remand for reconsideration of Husband's overpayment claim. We affirm all other orders.

### FACTUAL AND PROCEDURAL HISTORY

¶2        The 2017 decree of dissolution allocated community property and tax obligations, awarded spousal maintenance to Wife, ordered Husband to return $50,000 to his 401(k) account, and granted Wife $5,500 in attorneys' fees. Husband appealed from the decree in 2017 ("2017 Appeal"), and this court affirmed. *See Aguiniga v. Aguiniga*, 1 CA-CV 17-0299FC, 2018 WL 3722504 (Ariz. App. July 31, 2018) (mem. decision).

¶3        While the 2017 Appeal was pending, Wife submitted a QDRO and asked the superior court to divide a pension that was not included in the decree. In turn, Husband objected and petitioned to enforce other provisions in the decree. In response, Wife also sought to enforce the decree. After a hearing on these petitions, the court ordered the parties to sell vehicles (including a recreational vehicle), sign 2014 tax returns, and "encourage[d]" Husband to refinance the marital home within sixty days.

¶4        After the mandate issued in the 2017 Appeal, both parties again petitioned to enforce the decree and hold the other in contempt. Wife submitted a different QDRO, to which Husband objected. The superior court addressed these petitions in an August 2020 order ("2020 Order"). The 2020 Order (1) confirmed Husband's obligation to return $50,000 to the 401(k) account; (2) entered a judgment against Husband for temporary

spousal maintenance arrearages; (3) ordered Husband to remove Wife's name from the loan related to the marital home by a certain date or sell the home; (4) affirmed the equalization payment due Wife for the community vehicles; (5) affirmed Husband's obligation to pay half the 2010 tax liability; (6) ordered the parties to share equally in any 2014 tax return or liability; (7) ordered Husband to pay the $5,500 attorneys' fees award from the decree; and (8) sanctioned Husband $5,000 for contempt. The court also awarded Wife additional attorneys' fees in an amount to be determined.

**¶5**     Before the superior court entered a final attorneys' fee award, Husband moved to alter or amend the 2020 Order under Arizona Rule of Family Law Procedure ("Rule") 83, alternatively for relief from judgment under Rule 85. In its February 2021 order ("2021 Order"), the court denied Husband's motion on all but one issue not relevant to the appeal and awarded Wife $2,500 in attorneys' fees, consistent with the 2020 Order. Husband appealed from the 2021 Order within thirty days.

## DISCUSSION

I.     Jurisdiction

**¶6**     We have an independent duty to determine whether we have jurisdiction over this appeal. *In re the Marriage of Kassa*, 231 Ariz. 592, 593, ¶ 3 (App. 2013). Under Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(2), we have jurisdiction over special orders after judgment. Generally, a ruling on a motion for relief under Rule 83 or 85 falls under this statutory jurisdiction. However, a party may not seek relief under Rule 83 from a post-decree order. *See Choy Lan Yee v. Yee*, 251 Ariz. 71, 77, ¶ 19 (App. 2021) (holding that "a Rule 83 motion challenging a post-decree order or any ruling other than a Rule 78(b) or (c) judgment is improper."). Thus, Husband's motion was improper under Rule 83.

**¶7**     Husband's motion was also improper under Rule 85 because it did not seek relief from a *final* Rule 78(b) or (c) judgment, order, or proceeding. *See* Rule 85(b). The 2020 Order left the amount of the fee award undecided. Because that order did not fully resolve all the issues raised in the petitions, it was not final. *See Bollermann v. Nowlis*, 234 Ariz. 340, 342, ¶ 8 (2014) (a judgment that does not resolve a request for attorneys' fees is not final absent Rule 78(b) language); *Sw. Barricades, L.L.C. v. Traffic Mgmt., Inc.*, 240 Ariz. 139, 141, ¶ 11 (App. 2016) (noting that a motion under

comparable Arizona Rule of Civil Procedure ("Civil Rule") 60(b) only applies to a *final* judgment, order, or proceeding).[1]

**¶8**          As a result, the superior court lacked authority to rule on Husband's Rule 83 or 85 motion, and we lack jurisdiction to consider the order denying that motion. *See Choy Lan Yee*, 251 Ariz. at 77, ¶ 19 (because the superior court lacked authority to rule on improper Rule 83 motion, this court lacked appellate jurisdiction over an appeal from that ruling); *Maria v. Najera*, 222 Ariz. 306, 308, ¶ 10 (App. 2009) ("Because the [ruling] at issue here was not final, the denial of the new trial motion directed to that order did not create appellate jurisdiction . . . ."). Nor did the inclusion of Rule 78(c) language make the 2020 Order final because such language was not substantively appropriate. *See In re the Marriage of Chapman*, 251 Ariz. 40, 43, ¶ 10 (App. 2021).

**¶9**          The 2021 Order did, however, resolve the outstanding attorneys' fee issue, thereby making the 2020 Order final and appealable. *See* A.R.S. § 12-2101(A)(2). For these reasons, we consider the ruling on the post-decree petitions to enforce but not the denial of Husband's Rule 83 or 85 motion. We also decline to consider Husband's appeal from contempt orders because contempt rulings are not appealable. *See Danielson v. Evans*, 201 Ariz. 401, 411, ¶ 35 (App. 2001).

II.     Due Process

**¶10**          Husband argues that he was entitled to a new trial because the limited hearing time violated his due process rights. Due process claims are issues of law that we review de novo. *Mack v. Cruikshank*, 196 Ariz. 541, 544, ¶ 6 (App. 1999). Due process requires that the court "afford the parties an opportunity to be heard at a meaningful time and in a meaningful manner." *Volk v. Brame*, 235 Ariz. 462, 468, ¶ 20 (App. 2014) (citation and internal quotation marks omitted). "[T]o merit reversal, a party must show they incurred some harm as a result of [a] court's time limitations." *Gamboa v. Metzler*, 223 Ariz. 399, 402, ¶ 17 (App. 2010) (citation and internal quotation marks omitted).

---

[1]     Because Rule 85(b) is virtually identical to Civil Rule 60(b), we may apply interpretations of Civil Rule 60 to Rule 85. *See* Ariz. R. Fam. Law P. 1(c) ("If language in these rules is substantially the same as language in the civil rules, case law interpreting the language of the civil rules will apply to these rules.").

¶11	According to Husband, he needed more time because of Wife's untimely disclosure of many exhibits and her responses during cross-examination. However, as Husband acknowledges, at the end of the first day, when it was clear that more evidence was needed, the court added another ninety-minute session.

¶12	Husband argues the additional ninety minutes did not satisfy due process because the court awarded more time to Wife even though he had not presented any evidence on the first day of the hearing. Although Husband did not testify on the first day of the hearing, it is not because the court gave Wife "all the time." Husband's attorney chose to use his time cross-examining Wife rather than call Husband to testify. The court also noted the inefficient handling of exhibits and admonished the parties to better prepare for the second day of the hearing. The court determined that the added hearing time would allow Husband to respond to Wife's exhibits. Although this case involved multiple issues, Husband's inefficient use of time does not constitute a due process violation by the court. *See Volk*, 235 Ariz. at 469, ¶ 22.

¶13	On the second day of the hearing, Husband's attorney asserted that if given more time Husband would testify that, contrary to Wife's position, he did pay his share of the 2010 taxes. On appeal, Husband contends that he was not given enough time to explain why he did not repay the $50,000 to the 401(k) account as ordered. The court's failure to grant Husband more time does not amount to prejudice requiring a new trial. Husband chose which issues to address at the hearing and how much time to dedicate to each. His inability to present certain evidence stemmed from his own trial time-management decisions. *See id.* Thus, he has shown no due process violation. Nor do we find that the superior court violated Husband's due process rights when it allowed Wife's QDRO attorney additional time to argue at the second hearing without allowing Husband an opportunity to respond. Husband did not object to the court's failure to give him time to respond. Accordingly, he has waived this issue.

¶14	Husband also argues that the court erred in failing to sanction Wife for submitting untimely exhibits. However, the court noted that Wife failed to identify a previously-disclosed document as an exhibit, unlike Husband who offered a document that had not been previously disclosed. Thus, the court did not abuse its discretion by declining to sanction Wife. *See Seidman v. Seidman*, 222 Ariz. 408, 411, ¶ 18 (App. 2009) (rulings on sanctions for discovery violations reviewed for an abuse of discretion).

III.     The Quadro

¶15        The parties disputed the appropriate language to include in the QDRO.  Husband argued the QDRO should allocate one-half the value of the 401(k) as of the dissolution date, and Wife asserted that the QDRO should state that her interest is $31,059.93, which is one-half the balance of the 401(k) account as found in the decree.  Husband argues, however, that Wife's interest must account for an $11,157.69 loan against the 401(k) at the time of the dissolution.  Wife's QDRO attorney explained these arguments to the superior court and offered the proposed QDRO as an exhibit. Husband objected.  Despite the confusing nature of the objection, Husband claimed the QDRO was "defective."

¶16        Husband argues the QDRO presented to the court was different from the one Wife's QDRO attorney purported to submit.  The QDRO attorney erroneously told the court that Exhibit 65 included the QDRO awarding Wife the sum certain of $31,059.93.  But the QDRO in Exhibit 65 does not contain this language; it states that Wife's interest in the 401(k) account is 50% of the value as of the valuation date, without providing a specific value.  A different QDRO in the record states that Wife's interest is $31,059.93, without accounting for the loan.

¶17        The court ultimately signed the QDRO that included the specific amount of $31,059.93.  But before doing so, the court heard Wife's testimony on the $11,157.69 loan issue.  Specifically, Wife testified that the two took out the loan during the marriage to pay a community expense but that she gave Husband the money to repay the loan and he did not.  Given Wife's testimony, the court was within its discretion to make Husband responsible for the $11,157.69 loan.  *See* A.R.S. § 25-318(C).  And although there is no ruling addressing this loan directly, in its final order the court denied all relief not expressly granted, so the ruling implicitly denies Husband's claim regarding the loan.  The court also did so implicitly when it signed the QDRO stating that Wife's interest was $31,059.93.

IV.     Spousal Maintenance

¶18        The superior court entered a judgment against Husband for temporary spousal maintenance arrearages plus interest.  As the court noted, there are multiple case status reports from the Support Clearinghouse containing different amounts.  One report included arrearages from temporary support orders, whereas the other reports do not include the temporary support arrearages.

**¶19** The temporary order required Husband to pay Wife $750 per month effective October 1, 2014. Because the court entered this order in June 2015, Husband was immediately eight months in arrears. The decree reduced the final support awarded to $500 per month from May 1, 2016 through December 31, 2016, but did not affirm or reduce the temporary support arrearage to a judgment.

**¶20** Husband made his first temporary support payment in August 2015, and then he underpaid for several months until the court entered the final support award. Starting May 2016, Husband overpaid his support obligation by varying amounts through March 2017. Wife's petition to enforce the decree sought a judgment for the temporary support arrearages. By contrast, Husband argued that he overpaid, and Wife owed him.

**¶21** Husband contends that because the decree did not affirm or reduce the temporary support arrearages to a judgment, the temporary support arrearages were unenforceable under A.R.S. § 25-315(F)(4). This is a question of law we review de novo. *Alley v. Stevens*, 209 Ariz. 426, 428, ¶ 6 (App. 2004).

**¶22** Under A.R.S. § 25-315(F)(4) and Rule 47(j)(1), temporary orders terminate upon entry of the final decree. Rule 47(j)(1) further provides that, upon entry of a final decree, temporary orders are unenforceable unless the final decree provides otherwise. "Thus, when a final decree does not include a judgment for the arrearages owed under temporary orders, those arrearages are no longer enforceable." *Valencia v. Valencia*, 1 CA-CV 19-0223FC, 2020 WL 1522820, at *2, ¶ 11 (Ariz. App. Mar. 31, 2020) (mem. decision) (citing *Moncur v. Moncur*, 1 CA-CV 14-0320, 2015 WL 1395296, at *2, ¶ 10 (Ariz. App. Mar. 24, 2015) (mem. decision)).[2] The court can prevent the paying parent from "simply not paying and 'running out the clock' on the temporary support order" by including a judgment for the temporary support arrearages in the final decree. *Valencia, id.* Absent that "[t]he creditor-parent can also object to or otherwise seek relief from a decree that fails to include the arrearages." *Id.*

**¶23** Because the decree did not include a judgment for temporary support arrearages, the superior court erred in entering a post-decree judgment for the temporary support arrearages. Accordingly, we vacate

---

[2] *See* Ariz. R. Sup. Ct. 111(c)(1)(C) (providing that memorandum decisions issued after January 1, 2015, may be cited for persuasive value).

the post-decree judgment for temporary support arrearages and remand for reconsideration of any overpayment.

V.      2014 Tax Liability

¶24      Husband contends that he paid the parties' 2014 tax liability, so the superior court erred by failing to enter a judgment in his favor for Wife's share.  Although Husband summarized the amount he claims Wife owes, his summary is not supported by any evidence in the record.  In addition, the record supports a finding that as a result of Husband withdrawing $50,000 from his 401(k) in 2014, the parties incurred a $5,000 tax liability.  Thus, even if Husband paid more than half of the 2014 tax liability, the court could properly consider that his unauthorized withdrawal created the $5,000 in tax liability.  *See* A.R.S. § 25-318(C).  The court thus did not abuse its discretion.

¶25      Husband also argues that Wife refused to sign the parties' 2014 tax returns until the court ordered her to do so in 2018.  He contends, therefore, that she should bear the cost of all interest and penalties resulting from the late filing.  The superior court found that "both parties failed to prove that the other party did not sign the tax return before the deadline or that either party was responsible for any late filing of the 2014 taxes."  The record supports this finding.  Wife claimed she refused to sign the returns before the court order because Husband presented her with fraudulent returns.  Husband conceded that the 2014 taxes were filed before the April 15, 2018 deadline, which is confirmed by I.R.S. records.  Wife also testified that the fee for filing late in 2014 was credited back to the parties.  Thus, the court did not abuse its discretion by ordering the parties to equally divide any interest or penalties.

VI.     Additional Attorneys' Fees

¶26      The 2020 Order awarded attorneys' fees to Wife in an amount to be determined.  In denying Husband's Rule 83 or 85 motion, the superior court entered a judgment awarding Wife $2,500 consistent with the earlier fee award.  The court found that Husband was unreasonable in failing to repay the $50,000 to the 401(k), make the vehicle equalization payment, pay his share of the 2010 taxes, or pay the attorneys' fees awarded in the decree.  On appeal, Husband failed to show how his positions on these issues or failure to make these payments was reasonable.  Therefore, we affirm the award of $2,500 in fees to Wife.

**ATTORNEYS' FEES ON APPEAL**

**¶27**　　　Husband requests an award of attorneys' fees on appeal under A.R.S. § 25-324.  In the exercise of our discretion, we deny his request.  Husband is awarded his costs on appeal upon compliance with ARCAP 21.  *See* A.R.S. § 12-342(A).

**CONCLUSION**

**¶28**　　　We vacate the judgment for temporary support arrearages and remand for reconsideration of Husband's overpayment claim.  In all other respects, we affirm the superior court's orders.



AMY M. WOOD • Clerk of the Court
FILED:　AA