NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In the Matter of the:

FURST FAMILY TRUST, dated July 1, 1988, as amended.

ROBERT G. FURST; ZIA TRUST INC.,
*Petitioners/Appellees,*

*v.*

LINDA MAYNE, *Respondent/Appellant.*

No. 1 CA-CV 22-0646
FILED 10-5-2023

Appeal from the Superior Court in Maricopa County
No.  PB2019-001318
The Honorable Melody G. Harmon, Judge

**AFFIRMED**

COUNSEL

Taylor Young Appeals PLLC, Phoenix
By Taylor Young
*Counsel for Respondent/Appellant*

Forrester & Worth, PLLC, Phoenix
By John H. Worth, Byron H. Forrester
*Counsel for Petitioner/Appellee Zia Trust, Inc.*

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Paul J. McMurdie joined.

---

**T H U M M A**, Judge:

¶1 Linda Mayne appeals from the probate court's order approving a $200,000 settlement between a family trust and Robert Furst, a co-beneficiary and Linda's brother. Because Linda has shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2 This appeal is the most recent chapter in a high-conflict probate dispute between siblings over a family trust that has included several cases filed in Arizona and California. *Furst v. Mayne*, 1 CA-CV 21-0668, 2022 WL 17258422 (Ariz. App. Nov. 29, 2022) (mem. dec.). The trust, established in 1988, provided a mechanism to care for the parents of Linda and Robert. Robert and Linda were appointed co-trustees in 2018. By September 2019, after their father died and the siblings could not agree on trust management, their mother sought and obtained a court order appointing Zia Trust as trustee. Substantial litigation followed.

¶3 In October 2020, Robert sought reimbursement for expenses he claimed he incurred while caring for their mother. The petition alleged that, after their father died but before Zia's appointment, Linda "froze all of the assets of the" trust, forcing him to spend his own funds for their mother's care. The petition included an exhibit reflecting more than $200,000 in expenses. Zia and Linda first objected to the petition, but Linda later withdrew her objection, stating that "the responsibility to litigate the issue rests squarely with the trustee, Zia Trust."

**¶4** After substantial additional litigation, in May 2022, the court set a five-day evidentiary hearing to start on September 12, 2022. On June 16, 2022, Zia petitioned the court to approve a settlement agreement with Robert, seeking an accelerated hearing on the petition. Noting Robert sought $433,000 in reimbursement and estimating the Trust's potential liability at more than $190,000 before the expenses involved in the five-day hearing, the proposed settlement agreement would pay Robert $200,000 in exchange for the release of claims against the trust, Zia and others and resolution of three separate cases. Zia asserted the settlement was in the best interest of the trust: "Given the long and contentious history of these proceedings, the mounting costs of the Litigation, and the uncertain nature of all litigation in general, Zia believes this Settlement represents a fair and reasonable outcome and should be approved by the Court."

**¶5** Within a week, the court issued an order "setting an accelerated hearing on Zia's *petition to approve settlement agreement* for July 18, 2022." The court also issued a minute entry granting the motion for accelerated hearing and "setting an initial virtual hearing" for July 18, 2022, "(allotted time: 1 hour), in accordance with the formal written order."

**¶6** On July 1, 2022, Linda moved to continue the July 18, 2022 hearing. Linda's motion acknowledged receipt of Zia's petition and the proposed settlement agreement, identifying concerns about specific settlement agreement terms. Noting she would "be in Europe on a long-scheduled vacation" on July 18, 2022, and that she "must be represented by counsel to advise me regarding the Settlement Agreement," which she "will be opposing," she requested a continuance to allow her "30 days to obtain counsel."

**¶7** The court granted Linda's motion to continue, resetting "the initial hearing on the Petition to Approve Settlement Agreement" to "August 16, 2022 at 1:30 p.m. (1 hour)." That same order required Linda "to file any objection" to the petition "in writing no later than August 5, 2022." Linda's August 5, 2022 objection argued the settlement was unreasonable and not in the trust's best interests. In a filing that, with attachments, had more than 100 pages, Linda argued in some detail that Robert owed the trust money; he should not be paid the proposed amount; his expenses were smaller than claimed; Robert would not prevail in the litigation (including that "the case is almost completely ready for trial"); Zia was trying to avoid liability for claims Robert filed against it and payment under the proposed settlement would consume much of what was left in the trust. Linda's objection concluded by asking the court to "deny Zia's petition to approve the Settlement Agreement."

3

¶8 After taking appearances at the August 16, 2022 hearing, the court started by explaining: "we were originally set for an initial hearing on a petition to approve, which was continued until today because we knew there was a -- likely a forthcoming objection." Noting Linda's August 5, 2022 objection, the court asked how the parties wanted to proceed. Counsel for Zia responded that he was prepared to offer testimony from a former Zia employee; "I'm also prepared to make an offer of proof . . . the evidentiary part of any hearing would be very brief." Noting Linda's objection to the petition, the court asked if she was "prepared to argue or present on your objection today?" Linda responded: "I'm sorry. I'm not a lawyer, and I didn't realize that I should have been prepared. . . . But you tell me, what -- what do I need to do, if you can help me out." The court responded:

> well, you did do a very thorough job in your filing. So you can also rest on your pleading. You know, you have a written objection there, and I can hear testimony. I don't know if you -- if you were planning to present any testimony to support your objection, I could set on another day for an evidentiary hearing. But if you want to rest on the arguments in your [objection], I can consider the testimony presented by -- through [Zia's counsel] and make a ruling that way.

Linda responded that her "preference would be to have an evidentiary hearing, because I would need more time to prepare. I did as much as I could. I don't think I did as thorough of a job as I could have done. . . . So I would appreciate an evidentiary hearing." Zia's counsel expressed concern, given a five-day trial in less than a month before a different judge, concluding that "our position is the briefing's closed. We have our motion, we have [Linda's] objection, and we're ready to go forward." After Linda then responded, noting the settlement agreement "leaves me wide open to Robert filing something against me and Zia Trust," the court noted Linda had "put together a very clear statement, you know, outlining your position," adding the court would "go ahead and allow" Zia's counsel "to call his brief witness today," and that Linda "will also have the right to ask any questions of his witnesses that you may wish." Linda did not object to that proposed course, instead responding, "Okay. Thank you."

**¶9**        Zia's witness then testified that this settlement would allow the trust to avoid the cost and risk of trial, adding that even if the trust prevailed at trial, Robert would likely appeal. The witness added that, at a mediation in 2021, Zia had made a settlement offer to Robert significantly higher than the $200,000 settlement agreement amount. After direct examination, the court asked Linda if she had "questions for this witness?" Linda responded, "Yes, I do." Without objecting to proceeding, Linda then cross-examined the witness about claims Zia had made for reimbursement for litigation costs against Robert, the status of pending litigation, and whether the settlement was in the best interest of the trust and its beneficiaries. Toward the end of Linda's cross-examination of Zia's witness, Linda noted she had "a short list of unfinished business that I believe the trust needs to address, but we can address that later on." The court responded "those are things that you [Linda] should cover" when she testified.

**¶10**        After redirect, Linda was sworn and testified. The court asked her to testify "in a narrative fashion what you want to testify to," and Linda then did so, including testifying about the extensive litigation the trust was involved in and her belief that the settlement agreement improperly depleted the trust's funds. Zia's counsel elected to respond to Linda's testimony in closing argument, not cross-examination. The court then asked if Linda was comfortable going to closing arguments rather than cross-examination, and she agreed, noting she wanted to "just hear what [Zia's counsel] has to say, and then I might have a comment or two?" with the court responding "Well, yes. And then you can make a closing argument, certainly." Robert testified, and when the court asked Linda whether she would prefer to cross-examine him or address issues in closing arguments, "for the sake of time and not really knowing how to cross examine him," Linda elected to defer to closing arguments. The court then "move[d] to closing arguments," first hearing from Zia and, without objection, Linda providing a closing argument. As the hearing ended, the court told the participants, "I'm going to take this under advisement," adding that it would "issue a ruling shortly," given the upcoming trial. Linda did not object to proceeding in that fashion. The evidentiary hearing started at 1:54 p.m., and including testimony and argument, ended at 3:30 p.m.

**¶11**        About ten days after the hearing, Linda filed a "Request for Evidentiary Hearing; Notice of Intention to File a Supplement" to her August 5, 2022 objections. In the filing, Linda stated she "requested an Evidentiary Hearing" at the August 16, 2022 evidentiary hearing "and understood" the court "to offer the opportunity for an Evidentiary Hearing if requested. Linda hereby renews her request for an Evidentiary Hearing."

Linda again argued that settlement was a "total capitulation" and not warranted, adding "[a] hearing is required to address these and other important issues to be considered in determining the reasonableness, or lack thereof, of Zia's proposed settlement." Zia promptly moved to strike, noting Linda's request "is untimely, unauthorized, and cumulative, and it represents an impermissible surreply or unauthorized supplemental brief to a matter that is now under advisement." Zia noted Linda had "already received additional time to brief and argue this matter, and the Request raises issues that were in fact already briefed and argued." Zia added that the court "heard oral argument and testimony at the August 16, 2022 hearing and took the matter under advisement. No further briefing or evidence has been requested, and no legal authority for providing it has been given."

¶12        Two days later, without ruling on Linda's request, the court approved the settlement agreement and issued a final judgment reflecting that ruling. This court has jurisdiction over Linda's timely appeal under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) §§ 12- 120.21(A)(1) and -2101(A)(1) (2023).[1]

## DISCUSSION

¶13        Linda argues "[b]y turning the initial hearing and status conference into an evidentiary hearing without notice, the superior court" denied her due process rights. Due process challenges are reviewed de novo. *Backstrand v. Backstrand*, 250 Ariz. 339, 346 ¶ 28 (App. 2020). "[D]ue process requires that litigants be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 346 ¶ 29 (citation omitted). Due process must be balanced against the superior court's discretion to control its docket. *Id.*

¶14        Citing *Volk v. Brame*, 235 Ariz. 462 (App. 2014), Linda argues that by receiving evidence at the August 16, 2022 hearing, the court "deprived [her] of a meaningful opportunity to present her evidence and test the veracity of Zia's claims." *Volk*, however, addressed the due process requirement that a court "afford the parties an opportunity to present sworn oral testimony." 235 Ariz. at 463 ¶ 1. Linda was afforded that right, by cross-examining Zia's witness, testifying herself and being allowed to cross-examine Robert. She also presented closing argument. Moreover, she does not, and could not, claim the duration of the hearing violated her due process rights. *Cf. Volk*, 235 Ariz. at 465 ¶¶ 4, 9 (finding due process

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

violation when 15 minute hearing did not allow time for sworn oral testimony).

¶15         Nor did Linda object to how the hearing proceeded. She did not object to the court receiving testimony, did not object to Zia's witness or Robert testifying and did not object to any specific questions asked. She also testified without objection and provided closing argument without objection. Nor did she object to the court taking the petition to approve the settlement under advisement at the end of the hearing. Thus, this case is unlike *Volk*, where the appellant objected to the form of the hearing throughout. *Id.* at 469 ¶22 n.6. Instead, given she did not promptly object or otherwise seek relief from the superior court for the arguments she seeks to press on appeal, she has waived those arguments. *See Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535 ¶ 18 (App. 2007) ("[A]rguments raised for the first time on appeal are untimely and deemed waived.").

¶16         Linda also argues, citing *Carlson v. Ariz. State Pers. Bd.*, 214 Ariz. 426 (App. 2007), that she was not given an adequate opportunity to prepare because she did not have notice the court would hear evidence at the August 16, 2022 hearing. *Carlson* addresses what due process requires before a public employee is "finally deprived of his constitutionally protected property interest in his continued employment." *Id.* at 431 ¶ 17. That issue is not presented here. Moreover, even if *Carlson* applied, Linda had notice of the settlement agreement and the arguments supporting its approval. Linda was granted a 30-day continuance to obtain counsel and adequately prepare. *Id.* at 433 ¶ 22. She had notice of Zia's arguments for the settlement agreement well before the hearing and, without objection, provided contrary testimony and argument at the hearing. *Carlson* does not show her due process rights were violated.

¶17         Finally, Linda argues the court deprived her of an opportunity to develop her case that Zia failed to adhere to its fiduciary duties. But, as explained above, without objection, she cross-examined Zia's witness, testified and presented argument at the August 16, 2022 hearing. Nor does the record support Linda's assertion that she was deprived of the opportunity to press this argument in superior court. Her pre-hearing written objection argued the settlement was an "abdication of [Zia's] fiduciary responsibility." At the hearing, Linda questioned Zia's witness about the potential harm the settlement may cause her as a beneficiary and the California litigation she argued causes a conflict of interest. Linda has shown no error in the court's order approving the settlement.

**¶18** Zia requests an award of its attorneys' fees incurred in this appeal under A.R.S. § 14-11004(A), (B). In the court's discretion, Zia is awarded a portion of its reasonable attorneys' fees and costs, contingent upon compliance with ARCAP 21.

## CONCLUSION

**¶19** The judgment is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA