NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO A.Z.

No. 1 CA-JV 24-0055

FILED 01-16-2025

Appeal from the Superior Court in La Paz County
No. S1500JD202200016
The Honorable Marcus A. Kelley, Judge

**AFFIRMED**

COUNSEL

Carr Law Office, PLLC, Kingman
By Sandra Carr
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Paul J. McMurdie joined.

---

**C A M P B E L L**, Judge:

¶1            Amber P. (Mother) appeals the termination of her parental rights on the grounds of abandonment, mental illness, chronic substance abuse, and six- and nine-months' time-in-care. *See* A.R.S. § 8-533(B)(1), (3), (8)(a)–(b). For the reasons below, we affirm.

## BACKGROUND

¶2            While living in a domestic violence shelter in California in August 2022, Mother gave birth to Austin.[1] She then moved to Arizona to live with Austin's father in Quartzite.[2] Two months later, the Arizona Department of Child Safety ("DCS") was called to investigate reports of the parents neglecting Austin. Mother admitted to the investigators that she was using methamphetamine and alcohol. She also explained she was having issues with her mental health and with past domestic violence. She later tested positive for amphetamines and methamphetamines. During this investigation, DCS discovered that Mother had six older children—and had lost her parental rights to each of them in California.

¶3            Soon after, DCS removed Austin from the parents' care and filed a dependency petition. Around January 2023, Mother moved back to California. She stopped communicating with DCS after a few months. While in California, she was arrested for attempting to cross a freeway on foot and for bringing dangerous drugs into the jail. She served about three months in jail and was placed on probation.

¶4            In October 2023, DCS moved to terminate Mother's parental rights, alleging abandonment, mental illness, chronic substance abuse, and six- and nine-months' time-in-care. At the initial hearing, the court granted Mother's request to appear remotely via videoconference at the contested

---

[1]     We use a pseudonym to protect the child's identity.
[2]     Father's parental rights were terminated, but he is not a party to this appeal.

termination hearing. Mother was uncertain she could come to Arizona but stated she would continue working with the California probation department to get permission to go to Arizona or to appear remotely. The court warned her, "as far as I'm concerned, technical difficulties are on [you]. So you assume the risk if you appear remotely." At the hearing in February, and Mother had technical issues appearing by video. The court advised Mother she had the option to appear in person, but she did not request to do so. In any event, the adjudication was continued because DCS failed to upload its exhibits to the court's exhibit management platform.

¶5            Eight days later, the court held the termination adjudication hearing. Mother, appearing remotely, testified first, addressing the alleged grounds for termination. She acknowledged that she was homeless and explained that she needed custody of Austin "to get housing quicker." She admitted that she had consumed alcohol "a couple nights ago" and was using amphetamine, claiming, without documentation, that a doctor had prescribed it. She conceded that she had not attempted to contact Austin in the previous eight months. After cross-examination, Mother's attorney reserved the right to recall his client after the other witnesses testified.

¶6            Three DCS employees testified, explaining the services that were offered to Mother, including supervised visits with Austin and programs to address substance abuse, mental health, and domestic violence. The DCS employees stated that Mother failed to participate meaningfully in these services or consistently visit Austin.

¶7            After DCS presented its case, Mother's attorney recalled her to testify, but her cell connection was poor. The court suggested she hang up and call back. Mother hung up, but she never called back. The court directed the attorneys to proceed with their closing arguments. During the arguments, Mother informed her attorney that her phone was "at 2 percent" charge and "every time she tries to call, it dies." Her attorney objected to the court ruling without Mother having "a full opportunity to testify in her own case," but did not make an offer of proof about what evidence Mother would present should she be given the opportunity. The court overruled the objection, explaining that Mother chose to attend remotely, and she was warned of the risks of technological issues and the consequences should issues arise. The court then opined that DCS had "met its burden with clear and convincing evidence on all grounds" and explained its rationale. DCS lodged a proposed final order with findings of fact and conclusions of law on each of the five grounds. The court signed a final order, adopting those findings and conclusions. Mother timely appealed.

**DISCUSSION**

**¶8**         Mother argues on appeal that (1) the juvenile court deprived her of her due process right to present evidence and (2) the termination order is invalid because it lacked mandatory findings.

**I.         Due Process**

**¶9**         "[A] parent has due process rights 'to be present,' 'to participate,' and to testify in the termination adjudication hearing." *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 444, ¶ 23 (2018) (citation omitted). Mother argues the juvenile court infringed on those rights by terminating her parental rights without allowing her to present her remaining evidence.

**¶10**         DCS contends that Mother waived her due process claim by not raising it in the juvenile court, and our review should be limited to a fundamental error review. *See id.* at 447, ¶ 37. DCS argues that although Mother "requested a continuance and suggested that she did not 'have a full opportunity to testify in her own case,' she did not specifically invoke due process." We disagree. Although Mother "did not object with the 'magic words' of due process, [s]he implicitly raised the same arguments below that [s]he now presents on [appeal] and therefore adequately preserved the issue for our review." *Volk v. Brame*, 235 Ariz. 462, 469, ¶ 22 n.6 (App. 2014). Accordingly, we review her due process claim de novo. *See Brenda D.*, 243 Ariz. at 442, ¶ 15.

**¶11**         Because parental rights are fundamental, due process requires courts to apply "fundamentally fair procedures" before severing those rights. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005) (citation omitted). Due process generally requires an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Dep't of Child Safety v. Beene*, 235 Ariz. 300, 305, ¶ 11 (App. 2014) (citation omitted). Generally, we analyze four factors to determine what process is due: "(1) the 'nature of the proceedings,' (2) the 'private interests at stake,' (3) the 'interests of the state,' and (4) the 'risk that the procedures used will lead to erroneous decisions.'" *Tracy D. v. Dep't of Child Safety*, 252 Ariz. 425, 434, ¶ 33 (App. 2021) (citation omitted).

**¶12**         Mother does not address these factors, instead, she summarily asserts that by "concluding the trial in Mother's absence, the juvenile court deprived Mother of a fundamentally fair proceeding." "Due process errors require reversal only if a party is thereby prejudiced." *Volk*, 235 Ariz. at 470, ¶ 26. A party may only claim error in a ruling that excludes evidence if the "party informs the court of its substance by an offer of proof,

unless the substance was apparent from the context." *See State v. Zaid*, 249 Ariz. 154, 157, ¶ 8 (App. 2020) (quoting Ariz. R. Evid. 103(a)(2)). An offer of proof is simply a detailed description of the proposed evidence. *State v. Bay*, 150 Ariz. 112, 115 (1986). An offer of proof serves two purposes: to put the trial court in a better position to determine whether it would be erroneous to exclude the evidence and to enable an appellate court to determine whether any error was harmful. *Jones v. Pak-Mor Mfg. Co.*, 145 Ariz. 121, 129 (1985). Mother did not make an offer of proof, nor does she explain how her additional testimony would have decreased the risk of an erroneous decision. *See Tracy D.*, 252 Ariz. at 434, ¶ 35 ("[A]s to the risk that the procedures used will lead to erroneous decisions, we look to the specific circumstances of the case . . . .").

**¶13**     Mother testified at length and concluded her direct testimony before experiencing technical difficulties. She made no offer of proof about what evidence she would present if given the opportunity and therefore failed to show the necessary prejudice required to find a due process violation.

**¶14**     And considering many facts supporting the grounds for termination came from Mother's admissions in earlier testimony, we are unpersuaded that precluding rebuttal testimony caused Mother prejudice. Moreover, Mother did not appear remotely out of necessity. Even though she was on probation, she could have requested a modification to allow travel to Arizona to participate in the adjudication in person. The court warned her at length that by choosing to appear telephonically, she assumed the risk of technological difficulties.

**¶15**     Mother has demonstrated no basis to support a finding of a violation of due process. *See John M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 320, 325, ¶ 19 (App. 2007) (affirming severance despite a due process claim, when appellant provided no basis to conclude that the proceedings "were fundamentally unfair; that the result of the hearing is unreliable; or that . . . the court would have reached a different result"). The court did not commit error.

## II.     Mandatory Findings

**¶16**     Mother next argues that the order terminating her parental rights is invalid because it lacks some of the statutorily required findings. She asserts that the court's oral pronouncement did not include findings on jurisdiction, required efforts, or best interests. And although the subsequent written order made findings on those topics, she claims the findings were

invalid because DCS's attorney drafted them, not the court, and they went beyond the court's oral pronouncements. Because Mother did not raise this issue in the juvenile court, she has waived it on appeal. *See Aleise H. v. Dep't of Child Safety*, 245 Ariz. 569, 573, ¶¶ 12–13 (App. 2018) (concluding that Mother waived her claim that the superior court did not make adequate best-interests findings because she failed to raise it below).

**¶17**　　　Waiver aside, Mother's argument fails. It rests on the proposition that the juvenile court may not expressly adopt proposed findings, even if they are supported by the record. But Mother has not cited, nor are we aware of, any authority supporting that proposition. *But see Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 299, ¶ 26 (App. 2020) (holding that courts may not *impliedly* adopt all allegations from a petition). The court did not err in adopting the suggested findings provided by DCS in its termination order and, in so doing, made each of the required findings.

## CONCLUSION

**¶18**　　　For these reasons, we affirm the termination of Mother's parental rights to Austin pursuant to A.R.S. § 8-533(B)(1), (3), and (8)(a)–(b).

