NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

LUCAS ALEXANDER WOYTON, *Petitioner/Appellant*,

*v.*

TICIANE WARD, *Respondent/Appellee*.

No. 1 CA-CV 21-0728 FC
FILED 4-4-2023

Appeal from the Superior Court in Yuma County
No.  S1400-DO-2017-00838
The Honorable Patricia A. Green, Judge *Pro Tempore*

**REVERSED IN PART; VACATED IN PART; AFFIRMED IN PART;
REMANDED FOR RECONSIDERATION**

COUNSEL

Berkshire Law Office PLLC, Tempe
By Keith Berkshire, Alexandra Sandlin
*Counsel for Petitioner/Appellant*

Stevens & Van Cott, PLLC Scottsdale
By Charles C Van Cott
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge Michael J. Brown joined.

---

**P E R K I N S**, Judge:

¶1　　　　This is the second appeal by Lucas Woyton ("Father") challenging the superior court's relocation order, child support order, and denial of several pending motions. We reverse the relocation order, vacate the first child support order and remand for recalculation, and affirm all other rulings.

**FACTS AND PROCEDURAL BACKGROUND**

¶2　　　　A full factual history is set forth in this court's earlier opinion, *Woyton v. Ward*, 247 Ariz. 529, 530–31, ¶¶ 2–4 (App. 2019). Father and Ticiane Ward ("Mother") have one daughter ("Child"), born in 2016. They all lived in Yuma until Mother left with Child for Massachusetts in June 2017, without Father's consent.

¶3　　　　Father petitioned for legal separation and emergency primary parenting time without notice. The superior court granted the emergency motion and ordered that Child be returned to Arizona. The temporary orders named Father as the primary residential parent and allowed Mother to exercise parenting time in Arizona or Massachusetts. The 2018 decree awarded the parties joint legal decision-making authority, granted Mother primary residential parent status, granted parenting time to Father, and ordered that Father pay child support effective April 1, 2018 ("first child support order"). Father appealed the decree, including the first child support order. While this appeal was pending, the parties filed several motions on various issues.

¶4　　　　In Father's first appeal, this court held the superior court erred by failing to consider the relocation factors in A.R.S. § 25-408(I). *Woyton*, 247 Ariz. at 533, ¶ 12. We vacated the parenting plan in the 2018 decree and remanded for a new trial. *Id.* We also vacated the first child support order and remanded for recalculation, but concluded that the record evidence did not support the attribution of $650 in childcare costs to Mother. *Id.* at 534, ¶¶ 17, 19.

**¶5** The superior court conducted a four-day trial over several months. In its October 2021 ruling, the court found that relocation to Massachusetts was in Child's best interests. The court entered a new child support order effective September 1, 2021 ("current child support order"). As for past support—between April 1, 2018, and August 31, 2021—the court affirmed the first child support order, reasoning that the parties did not provide sufficient evidence for recalculation. Father appealed.

**¶6** The superior court's October 2021 ruling did not adequately explain the basis for its decision that relocation was in Child's best interests, as required by Section 25-403(B). We stayed Father's appeal and ordered the court to state the reasons why, based on its findings, relocation was in Child's best interests. The court entered a supplemental order in November 2022. We have jurisdiction. A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.    Relocation and Parenting Time

**¶7** We review relocation orders for an abuse of discretion. *Layne v. LaBianca*, 249 Ariz. 301, 302, ¶ 5 (App. 2020). An abuse of discretion exists when the ruling lacks evidentiary support or when the court misapplies the law or a legal principle. *Woyton*, 247 Ariz. at 531, ¶ 5.

**¶8** When relocation is contested, the court must decide whether to allow the relocation "in accordance with the child's best interests." A.R.S. § 25-408(G). In determining the child's best interests, the court must consider the factors listed in Section 25-403(A) and Section 25-408(I). *Woyton*, 247 Ariz. at 533, ¶ 12. The parent seeking relocation has the burden of proving that relocation is in the child's best interests. A.R.S. § 25-408(G).

**¶9** Father argues the superior court found nearly all of the statutory factors to be neutral, and thus Mother failed to meet her "high burden" of showing that relocation was in Child's best interests. According to Father, Mother has a heightened burden, given Arizona's stated public policy that it is in a child's best interests "[t]o have substantial, frequent, meaningful and continuing parenting time with both parents." A.R.S. § 25-103(B)(1). But this policy also recognizes that evidence may show substantial parenting time is *not* in the child's best interests. *Id*. As this court recognized in Father's first appeal, equal parenting time is not always possible, "particularly when the parties live in different states or are separated by a considerable distance." *Woyton*, 247 Ariz. at 531, ¶ 6.

**¶10** The plain language of Section 25-408(G), read in conjunction with Section 25-103(B)(1), does not impose a *heightened* burden of proof on the parent seeking relocation. Absent an express statement of a clear and convincing evidence standard or other higher burden of proof, we apply a preponderance of the evidence standard. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 21 (2005) ("Had the legislature desired to apply the clear and convincing evidence standard to the finding of best interests of the child, it easily could have done so."). To be sure, Mother must show it is in Child's best interests to relocate instead of staying in Yuma. But the burden of proof is a preponderance of the evidence standard.

**¶11** Father challenges the superior court's relocation decision on several grounds. He contends the court made findings in its supplemental ruling that conflict with its previous ruling. He also argues the court's findings are not supported by the record and fail to show relocation is in Child's best interests.

**¶12** In its October 2021 ruling, the court did not explain how it balanced Child's relationships with Mother's extended family in Massachusetts, and with Father's girlfriend and son in California. *See* A.R.S. § 25-403(A)(2) (child's relationship with parents, siblings, and others who may significantly affect the child's best interests). The court found Mother's extended family provided financial, childcare, and travel assistance. The ruling stated that Father's son visited with him half of the time. But in its supplemental order, the court found that Father's son lived only "sometimes" with Father and "mostly" with his mother in California. Although the court made inconsistent findings on this matter, Father's testimony was also inconsistent.

**¶13** The October 2021 ruling also included varied findings about whether Mother relocated, and whether Father opposed her relocation, in good faith. *See* A.R.S. § 25-408(I)(2). The court referred to its earlier finding that the parties did not act in Child's best interests, but then found that the parties acted in good faith at the time of the new trial. The court also found that Mother left Yuma in 2017 without Father's knowledge or consent, thereby disrupting his planned deployment. To explain these mixed findings, the court stated that Mother's unauthorized move was not in bad faith because the parties previously agreed Mother would move to Boston during Father's anticipated deployment.

**¶14** But contrary to its finding in the October 2021 ruling, the court's supplemental order stated that Father was *not* acting in good faith when he opposed relocation. The court based this new and contradictory

finding on its conclusion that Father was not credible when he said he intended to remain in Yuma. The court cited Father's testimony that he only stayed in Yuma because of the ongoing legal proceedings and because his girlfriend and son had not moved to Yuma with him.

¶15 Generally, we defer to the superior court's credibility determinations. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019). But the credibility decision here is based on a misstatement of the evidence. Father testified that he planned to stay in Yuma long term. He testified that the legal proceedings were "one reason" he stayed in Yuma, but he also stayed because he has a job, a girlfriend, community involvement, and because Child had grown up in Yuma. He also testified that his girlfriend and son would move to Yuma permanently "when things get back to normal." The court erred in finding that the legal proceedings were the only reason Father remained in Yuma. Consequently, the court's credibility determination is not supported by the record.

¶16 To warrant reversal, the court's factual error must be prejudicial. *See Creach v. Angulo*, 189 Ariz. 212, 214 (1997). "Reversible error is, '[i]n appellate practice, such an error as warrants the appellate court in reversing the judgment before it; substantial error, that which reasonably might have prejudiced the party complaining.'" *Id.* (citing Black's Law Dictionary 543 (6th ed. 1990)).

¶17 Here, the court's factual error was compounded because it affected its credibility determination. The error caused the court to find that, contrary to its earlier finding, Father opposed relocation in bad faith. By reaching a conclusion opposite to its earlier ruling, the superior court exceeded our directive, which asked the court to state the reasons for its relocation decision. Instead of explaining its findings, the superior court gave a *different* reason for its ruling based on a misstatement of the record. Thus, the error was prejudicial.

¶18 The superior court found that the "prospective advantage of the move for improving the general quality of life" for Mother and Child, as well as its potential effect on Child's stability, weighed in favor of relocation. *See* A.R.S. § 25-408(I)(3), (8). As for whether relocation would allow "a realistic opportunity for parenting time with each parent," the court found this to be a neutral factor. *See* A.R.S. § 25-408(I)(5).

¶19 The evidence shows that Mother has extended family in Massachusetts and Father's relatives live in New York. Both parties had jobs and owned homes in their respective states. The court found there were

"greater educational options" in Massachusetts. But greater does not necessarily mean better, and the record did not show any *qualitative* difference between the educational opportunities in the two locations. The court referenced an email from Father to Mother "acknowledging that 'there aren't many schools in Yuma.'" But this statement does not support the inference that the schools in Yuma are inferior to those in Massachusetts, only that there are less schools to choose from. The evidence supporting these statutory factors is neutral to both parties.

¶20 In considering the effect of relocation on Child's stability and the realistic opportunity for parenting time, the court again relied on the mistaken fact that Father did not intend to stay in Yuma permanently. This factual error was prejudicial, *see supra* ¶ 17, and thus Section 25-408(I)(5) and (8) do not support relocation.

¶21 In fact, most statutory factors were neutral. For example, the court found:

- the child has a good relationship with both parents, § 25-403(A)(1);

- the child has spent time in both locations and has not yet adjusted to either due to her young age, § 25-403(A)(3);

- the child is too young to consider her wishes, § 25-403(A)(4);

- there are no mental or physical health concerns as to either parent, § 25-403(A)(5);

- both parents were "equally likely or unlikely to allow the child frequent, meaningful, and continuing contact with the other[,]" § 25-403(A)(6);

- no domestic violence, § 25-403(A)(8);

- domestic relations education requirements were met, § 25-403(A)(10);

- there was insufficient evidence that moving or not will negatively impact the child, § 25-408(I)(6);

- no evidence that either parent intended to gain a financial advantage as to child support, § 25-408(I)(7).

Other factors were irrelevant. *See* A.R.S. §§ 25-403(A)(7), (9), (11); 25-403.03; 25-403.05.

¶22 Viewing the record evidence that supports the court's decision, we are left with the finding that Mother has extended family in Massachusetts and Father has extended family in New York. *See* A.R.S. §§ 25-403(A)(2), 25-408(I)(3). We reiterate that Mother has the burden of showing that relocation is in Child's best interests. A.R.S. § 25-408(G). This is significant here, because Mother acknowledged that the benefits Child has living in Massachusetts do not outweigh Child's relationship with Father.

¶23 Overall, the evidence that relocation was in Child's best interests leads to neutral findings. Given Mother's own statement that maintaining a relationship with Father outweighed the benefits in Massachusetts, the evidence does not support the court's finding that Mother met her burden of proof. We vacate the relocation order and remand for the court to issue parenting time orders with Father as the primary residential parent if Mother does not intend to return to Yuma.

## II.    First Child Support Order

¶24 The first child support order attributed $650 in childcare costs to Mother. Because these costs lacked any evidentiary support, we vacated the child support order in Father's first appeal. *Woyton*, 247 Ariz. at 534, ¶¶ 19–20. But on remand, the superior court affirmed the first child support order because the parties did not provide sufficient information for recalculation. This was error. At the new trial, Mother again failed to provide evidence of her childcare expenses. On remand, the superior court only needed to remove the unsupported childcare amount and recalculate child support using the same figures.

¶25 We vacate the first child support order—covering April 1, 2018, to August 31, 2021—and instruct the court to enter a corrected child support order on remand. *See* A.R.S. § 25-320 app. ("Guidelines") § XVII(A) (2022) (courts shall apply the 2022 Guidelines to all orders entered after January 1, 2022, and only use the Guidelines in effect when the action was filed if the parties agree or the court determines there is good cause to do so).

## III.    Current Child Support Order

¶26 In determining the current child support order, the superior court found that Mother's monthly income remained $6,919. Father argues

Mother's income averaged approximately $15,000 to $21,000 per month. We review child support orders for an abuse of discretion, accepting the superior court's findings of fact unless clearly erroneous. *Engel v. Landman*, 221 Ariz. 504, 510, ¶ 21 (App. 2009).

¶27    Father offered Mother's bank statements for six months in 2020 into evidence. These statements showed several deposits into Mother's bank accounts, in addition to her regular salary and monthly veteran benefits. On appeal, Father suggests that these additional deposits came from Mother's part-time work as a realtor, but the statements show the deposits came from varied sources.

¶28    Gross income for child support purposes is broadly defined to include "income from any source." Guidelines § 5(A) (2018); *compare* Guidelines § II(A)(1)(b) (2022) (same). Income under the Guidelines is not limited to recurring income, such as wages. *See Cummings v. Cummings*, 182 Ariz. 383, 386 (App. 1994) ("The statute does not specify or limit the items that the court may consider in determining a parent's 'financial resources.'"). But "[i]ncome from any source which is not continuing or recurring in nature need not necessarily be deemed gross income for child support purposes." Guidelines § 5(A) (2018); *compare* Guidelines § II(A)(1)(d) (2022) (the court has discretion in how it considers "non-continuing or non-recurring income.").

¶29    Mother's bank records show deposits from unspecified sources, in addition to her regular salary and veteran benefits. In particular, there is one $20,000 electronic deposit from an unknown source in March 2020. There are other deposits from different sources in varied amounts, including two deposits totaling $7,412 from a realty company in July 2020. These deposits do not recur; they vary in source, amount, and frequency. The superior court was within its discretion to exclude these deposits as income for child support purposes. Guidelines § II(A)(1)(d) (2022). *See also Milinovich v. Womack*, 236 Ariz. 612, 615, 617, ¶¶ 7, 16 (App. 2015) (the court's decision to include a particular source of funds as income for child support is reviewed for an abuse of discretion).

¶30    We reject Father's contention that Mother's income as a part-time realtor must be included as income. The evidence showed two deposits—arguably from real estate commissions—in one six-month period. The record does not show Mother has historically earned income as a realtor or that these deposits are expected to continue. *See* Guidelines § 5(A) (2018) (authorizing the court to consider income that is greater than a parent would earn working full-time "if that income was historically

earned from a regular schedule and is anticipated to continue into the future"); *compare* § II(A)(3)(b) (2022) (same but omitting "from a regular schedule").

**¶31** Father argues the superior court was obligated to consider the factors in *Little v. Little*, 193 Ariz. 518 (1999). Not so. The *Little* factors apply when a parent voluntarily reduces her income, and the evidence here does not show that Mother was underemployed. *See* Guidelines § 5(A) ("Generally, the court should not attribute income greater than what would have been earned from full-time employment."); *compare* Guidelines § II(A)(3)(a) (2022) (same, reworded). The record supports the finding that Mother had a monthly income of $6,919.

## IV.    Due Process Claims

**¶32** In its October 2021 ruling, the superior court summarily denied any pending motions that had not been decided. Father argues the court violated his due process rights by resolving several pending motions without a hearing to determine credibility issues.

**¶33** Due process claims are issues of law, which we review *de novo*. *Mack v. Cruikshank*, 196 Ariz. 541, 544, ¶ 6 (App. 1999). Due process requires that the court "afford the parties 'an opportunity to be heard at a meaningful time in a meaningful manner.'" *Volk v. Brame*, 235 Ariz. 462, 468, ¶ 20 (App. 2014) (citation omitted).

**¶34** The superior court spent significant time at a July 2019 status conference determining which motions were pending and concluded the following remained: (1) Father's request for attorneys' fees incurred in responding to an earlier contempt petition that Mother withdrew; (2) paternal grandparents' petition for third-party rights; (3) motions related to Father's request for a protected address; (4) Father's January 2019 contempt petition; (5) Father's motion to reconsider the payment schedule for a fee award to Mother; and Mother's request for attorneys' fees related to Father's motion to reconsider.

**¶35** The court set a later hearing to resolve all issues except for the third-party petition; this hearing never occurred because of multiple judicial oversight changes. At a second status conference, the parties instead agreed to address the pending issues at the trial. Despite this agreement, on the first day of trial, the parties accepted the court's offer to "set additional time" to address the other issues in the pretrial statement. Father's pretrial statement listed eight pending motions, along with the relocation issue. Our review of the record shows that the pending issues

identified at the July 2019 status conference developed to include new issues related to Father's petition to modify child support, as well as a passport and foreign travel dispute.

¶36 At the end of the first day of trial, the parties needed more time to present their evidence, so the court granted another day. The trial eventually lasted four days. Neither party raised these motions at trial, besides Father generally asking the court to rule on the "pending motions." The October 2021 ruling denied any affirmative relief previously requested that was not expressly granted. Although Father lists the child support modification, passport, and foreign travel issues as summarily decided, the October 2021 ruling expressly addressed these issues.

¶37 The superior court did not deprive either party of an opportunity to address the pending motions at the four-day trial. And Father did not ask for a separate hearing to address these issues at the end of trial; he only asked the court to rule on the motions. His pretrial statement adequately presented his positions on the various motions, and the court generously extended the one-day trial to four days. The responsibility for failing to address these issues in that amount of time lies with the parties, not the court. Father's inefficient use of trial time does not violate due process. *See Volk*, 235 Ariz. at 469, ¶ 22.

## ATTORNEYS' FEES AND COSTS

¶38 Both parties request attorneys' fees under Section 25-324. After considering the parties' financial resources and the reasonableness of their positions throughout these proceedings, we decline to award fees on appeal. As the successful party on appeal, Father is entitled to an award of taxable costs upon compliance with ARCAP 21.

## CONCLUSION

¶39 We reverse the relocation order. On remand, the superior court must reconsider the parenting time orders in light of this decision. We vacate the first child support order and remand for recalculation as instructed. We affirm all other rulings.

