NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO N.N.H.

No. 1 CA-JV 23-0228
FILED 05-23-2024

Appeal from the Superior Court in Maricopa County
No. JD37277, JS21371
The Honorable Michael J. Herrod, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Maria Elena Cruz joined.

---

**B A I L E Y**, Judge:

¶1 Precilla H. ("Mother") appeals the termination of her parental rights to N.N.H. ("Child").[1] For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Mother is the biological parent of Child, born in February 2023. She also has two other biological children—J.E., born in 2006, and N.S., born in 2021.

¶3 Mother's history with the Department of Child Safety ("DCS") dates back several years. In 2019, DCS took temporary custody of J.E. because she was neglecting him, abusing drugs, and suffering from untreated mental health problems. The superior court adjudicated J.E. dependent and ordered a family-reunification case plan. Then, in 2021, she tested positive for methamphetamine after she gave birth to N.S. After DCS filed a supplemental dependency petition, the court also adjudicated N.S. dependent and affirmed the reunification case plan.

¶4 In that consolidated dependency, DCS offered Mother services, including supervised visitation, drug testing through Physician Services, Inc. ("PSI"), substance abuse treatment and mental health services at Terros, case management, transportation, a family support partner, and parenting education through the Nurturing Parenting Program. Her participation in these services was minimal, and in December 2022, the superior court terminated her parental rights to N.S. She appealed that termination order, arguing DCS failed to provide her with appropriate reunification services, but we affirmed. *See In Re N.S.*, 1 CA-JV 22-0282, 2023 WL 3589655, at *2–3, ¶¶ 8, 14 (Ariz. App. May 23, 2023) (mem. decision). His foster family adopted N.S., while J.E. has remained in DCS custody.

---

[1] The superior court also terminated the parental rights of the alleged biological fathers, J.S. and John Doe. They are not parties to this appeal.

**¶5** In February 2023—just two months after the superior court terminated Mother's parental rights to N.S.—Child was born substance-exposed, and Mother tested positive for methamphetamine and marijuana. DCS took temporary custody of Child and placed him with N.S.'s adoptive family.

**¶6** In April 2023, the superior court adjudicated Child dependent as to Mother and ordered a severance-and-adoption case plan. DCS petitioned to terminate Mother's parental rights to Child, alleging as grounds that she had a history of chronic substance abuse and a prior termination within the last two years. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3), (10). DCS later amended its petition to include a six-month out-of-home placement ground. *See* A.R.S. § 8-533(B)(8)(b).

**¶7** Even though the case plan was severance and adoption, DCS continued to provide Mother with reunification services. These services included visitation, taxis, bus passes, drug testing, and three new referrals to Terros.

**¶8** Mother, however, often missed her visits, and when she did attend, she was unprepared to care for Child. She did not drug test at PSI after Child's birth. In fact, across all of the dependencies, she has only drug tested three times, and those tests were positive for methamphetamine. Additionally, her new referrals to Terros were closed because she never attended her intake appointments despite rescheduling them multiple times.

**¶9** In November 2023, the superior court held a trial on DCS's petition to terminate the parent-child relationship. After the case manager testified, the court took a short recess for Mother, who had appeared telephonically, to speak to her attorney. When the trial reconvened, Mother's attorney said Mother planned to testify, but she had not returned the attorney's call. The court took another recess to give her additional time to call in. When she failed to appear after the second recess, the court proceeded in her absence and over her attorney's objection.

**¶10** The superior court terminated Mother's parental rights. The court found DCS made reasonable and diligent efforts to provide her with appropriate reunification services. The court also found DCS proved by clear and convincing evidence the statutory grounds it alleged and proved by a preponderance of the evidence that termination was in Child's best interests.

**¶11**        Mother timely appeals the termination order.  We have jurisdiction.  A.R.S. §§ 8-235(A), 12-120.21(A)(1), 12-2101(A)(1); Ariz. R.P. Juv. Ct. 601.

## DISCUSSION

**¶12**        The superior court may terminate a parent-child relationship if DCS proves at least one statutory ground set forth in A.R.S. § 8-533(B) by clear and convincing evidence.  *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).  The court must also find that termination is in the child's best interests by a preponderance of the evidence.  *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).  The court's factual findings are accepted if supported by reasonable evidence and inferences; its legal conclusions regarding a statutory ground for termination "will be affirmed unless they are clearly erroneous."  *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478–79, ¶¶ 30–31 (2023).  We do not reweigh the evidence on appeal but look "to determine if there is evidence to sustain the [superior] court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004) (citation omitted).

I.      DCS made a diligent effort to provide Mother with appropriate reunification services.

**¶13**        Focusing on the six-month out-of-home placement ground, DCS had to prove that it "made a diligent effort to provide appropriate reunification services."  A.R.S. § 8-533(B)(8)(b).  This obligation requires DCS to provide a parent with services and "the time and opportunity to participate in programs designed to help her become an effective parent." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Id.* (citation omitted).

**¶14**        On appeal, Mother challenges the superior court's finding that DCS made a diligent effort to provide her with appropriate reunification services.  Specifically, she contends DCS services were inadequate because it never provided her with taxis to and from Terros for her intake appointments.  At trial, however, the case manager testified that he had arranged taxis to take Mother to visitation and offered to provide taxis for drug testing.  He explained that when Mother wanted a taxi, she would ask him for one.  He further explained that she never asked him for transportation to Terros, so he never put it in place.  Because DCS made taxis available to her, the superior court did not err in finding DCS provided Mother with adequate services.

¶15 Mother also contends DCS never helped her communicate with Terros or provided her with a daily planner to keep track of her appointments. But the record shows she knew how to communicate with Terros and had participated in some services there during her prior dependency. The record also shows Terros employees actively sought to engage her in services by calling and emailing her several times before each of her intake appointments. Moreover, Mother rescheduled multiple appointments, demonstrating she was aware of those appointments and did not need a daily planner to keep track of them.

¶16 Mother next contends DCS knew she had multiple mental illnesses but never provided her with a psychological evaluation. The case manager testified DCS had been willing to refer her to a psychological evaluation but did not do so because DCS's consulting psychologist required Mother demonstrate thirty-days of sobriety first, which she never did. Mother argues that DCS obtained this advice during her prior dependency, but she cites nothing in the record to support the need for a new psychological consultation. The case manager also testified that had Mother gone to Terros, she would have had access to mental health services, including a psychiatric evaluation, medication management, and individual and group counseling. Mother knew that these services were available to her at Terros, and had previously participated in them, but did not do so in this case. Reasonable evidence supports the superior court's finding that DCS made a diligent effort to provide Mother with appropriate reunification services.

II. The termination of Mother's parental rights was in Child's best interests.

¶17 When determining the child's best interests, the superior court must focus on the child's needs and consider the totality of the current circumstances. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150–51, ¶¶ 13, 15 (2018). The court may find a child would benefit from termination if there is an adoption plan or if the child is adoptable. *See id.* at 150, ¶ 13. The court may also find that a child will benefit from the permanency and stability an adoption would provide. *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 337, ¶ 16 (App. 2004); *JS-501904*, 180 Ariz. at 352. Conversely, the court may find termination of the parent-child relationship is in the child's best interests if continuing the relationship would harm the child. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016).

¶18 Mother argues she was denied due process because the superior court improperly drew an adverse inference regarding Child's

best interests because she failed to testify at her termination trial. She argues we should remand for the superior court to reweigh best interests without making the improper inference.

**¶19** We review constitutional issues de novo. *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 442, ¶ 15 (2018). Parental rights may be terminated only through "'fundamentally fair procedures' that satisfy due process requirements." *Kent K.*, 210 Ariz. at 284, ¶ 24 (citation omitted). "Due process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections.'" *JS-501904*, 180 Ariz. at 355 (citation omitted). "Due process errors require reversal only if a party is thereby prejudiced." *Volk v. Brame*, 235 Ariz. 462, 470, ¶ 26 (App. 2014) (citation omitted).

**¶20** Mother has not shown how any alleged error prejudiced her because, even without the adverse inference, reasonable evidence supports the superior court's best interests finding. The superior court found that Child was adoptable and in an adoptive placement with the foster family who had previously adopted his brother, N.S. The court observed that there was little bond between Mother and Child because she "never actually parented th[e] child[.]" It also found "[t]he child has been placed with the same placement since birth and is bonded with that placement and his brother." The court concluded that Child would benefit from termination because "placement is providing the child with a loving and nurturing home environment and the child has thrived in their care." The court also concluded the Child would be harmed by continuing the parent-child relationship because Mother is still homeless and using drugs. Mother does not challenge any of these findings, which the record supports.

**CONCLUSION**

**¶21** We affirm.

