NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

RACHEL CARDONA, *Petitioner/Appellant*,

*v.*

BALLARD IVORY, *Respondent/Appellee*.

No. 1 CA-CV 24-0574 FC

FILED 08-05-2025

Appeal from the Superior Court in Maricopa County
No.  FC2020-004483
The Honorable Melissa M. Zabor, Judge

**AFFIRMED**

COUNSEL

Slaton Roebuck, PLLC, Scottsdale
By Sandra Slaton
*Counsel for Petitioner/Appellant*

Ballard-Elisha Ivory, Peoria
*Respondent/Appellee*

Squire Patton Boggs (US) LLP, Phoenix
By David S. Yates, David S. Norris
*Counsel for Amici Curiae Domestic Violence Legal Empowerment and Appeals
Project and The National Family Violence Law Center*

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Brian Y. Furuya and Judge Anni Hill Foster joined.

---

**T H U M M A**, Judge:

¶1 In this post-decree family court proceeding, Rachel Cardona (Mother) appeals from an order granting Ballard Ivory's (Father) petition to modify parenting time and legal decision-making.[1] Because Mother has shown no error, the order is affirmed.

### FACTS AND PROCEDURAL HISTORY

¶2 Mother and Father, who had four children together during their marriage, initiated divorce proceedings in Ohio. In March 2019, the Ohio court issued a decree dissolving the marriage with a parenting plan that allowed Mother to move with the children to Arizona, with Father having prescribed parenting time. In July 2019, Mother moved to Arizona with the children; in 2021, Father moved to Arizona. Meanwhile, the proceeding was transferred from Ohio to Arizona.

¶3 From 2020 through 2023, Mother and Father repeatedly asked the court to revisit parenting time and legal decision-making, with Father alleging Mother refused to comply with parenting time orders and Mother alleging that Father abused the children. Based on Mother's allegations, starting in April 2022, the court required Father's parenting time to be supervised. At the court's direction, Kristyn Alcott supervised Father's parenting time.

¶4 In March 2023, an evidentiary hearing was held on these competing positions. Alcott testified and her parenting time reports were provided to the court. The resulting May 16, 2023 order provided Mother and Father alternating weeks of parenting time, starting May 19, 2023.

---

[1] Mother urges this court to find that Father's answering brief is deficient. Given this appeal involves the best interests of children, this court will consider the merits and not deem Father's brief a confession of error. *See Hays v. Gama*, 205 Ariz. 99, 102-03 ¶ 18 (2003).

¶5            That first parenting exchange on May 19, 2023 was unsuccessful, with Mother calling the police and reporting the children refused to go with Father. In response, Father filed a petition to enforce and modify parenting time, seeking a warrant for him to take immediate custody of the children and alleging Mother failed to comply with the court's parenting time order. The court denied the petition, finding it "does not meet the steep legal requirement set forth by A.R.S. § 25-1061(A)."

¶6            On June 2, 2023, the second scheduled parenting time exchange, also was unsuccessful. Mother sent a message to Father about 30 minutes after the scheduled exchange time, stating "[i]t is now 6:36 pm and you have not arrived. I will assume that you don't intend to collect them and take them home." Father responded 40 minutes later that: "I didn't think you were going to let me have the kids after the two times I showed up with no exchange. If you want I can come to the fire station now if that is fine?" The parties then coordinated an exchange for the next day, which was again unsuccessful. Around this time, the court ordered the exchanges be supervised by a third party.

¶7            On June 16, 2023, the third scheduled parenting time exchange, again was unsuccessful. Mother was not present, sending her significant other instead. Alcott, who supervised the exchange, reported that the exchange lasted about an hour, that Mother's significant other "did nothing to assist" and that another individual identified as Mother's friend and a state legislator, interfered with the exchange.

¶8            On June 27, 2023, Father filed a petition and a motion for temporary orders without notice to enforce parenting time and to modify legal decision-making, parenting time and child support. Among other things, Father asked the court to enforce parenting time orders and issue a warrant under A.R.S. § 25-1061(A) for the police to take custody of the children to transfer them to Father, alleging Mother failed to "cooperate and transfer" the children on May 19, 2023; June 2, 2023 and June 16, 2023, all in violation of the May 16, 2023 order. Father alleged changes in circumstances including: (1) "a drastic decline in the Children's behavior," (2) Mother's refusal to provide court-ordered parenting time and (3) a "parental alienation scheme" by Mother.

¶9            Later on June 27, 2023, the court entered temporary orders granting Father sole legal decision-making authority and reducing Mother's parenting time up to two hours, supervised, each month. The court also issued an ex parte warrant for Father to take custody of the children, finding "Mother has refused to turn over the children for any

parenting time since May 16, 2023." Avondale Police executed the warrant later that day, transferring the children to Father.

¶10        On June 30, 2023, the court held a hearing on Father's motion for temporary orders. Alcott testified and the court received in evidence her supervised parenting time report addressing the unsuccessful exchange on June 16, 2023. After the hearing, the court affirmed the June 27, 2023 temporary orders, relying on Alcott's testimony and report.

¶11        In August 2023, Mother moved to remove Alcott as parenting time supervisor, claiming bias and inability to pay Alcott's fees. The court denied the motion, finding Mother failed to show bias or that Alcott's fees were unjustifiable. In October 2023, again Mother moved to change the parenting time supervisor, again expressing concerns about Alcott. The court granted Mother's motion, finding she was unable to pay Alcott's fees. In February 2024, Tanya Salazar, one of the individuals suggested by Mother, became the new parenting time supervisor and began submitting reports of her observations.

¶12        The court set a final orders hearing for April 2024 to consider Father's June 2023 filings. During a March 2024 pre-hearing deposition, Father stated Alcott could be a witness at the April 2024 hearing. Father, however, did not submit a pretrial statement. Mother filed a pretrial statement, primarily denying Father's allegations and listing the transcript of the June 2023 hearing as an exhibit.

¶13        At the April 2024 evidentiary hearing, Mother, Father and Salazar testified. Mother testified that Father abused her and the children and that Father refused to cooperate during the exchanges at issue. Mother had Salazar testify about Salazar's observations while supervising Mother's parenting time. Alcott did not testify. Although Mother had listed the transcript from the June 2023 hearing as an exhibit, she did not offer that exhibit at the hearing and that transcript is not part of the record on appeal. Mother sought to have her son, who was almost 18, testify, be interviewed by the court in chambers or be interviewed by Conciliation Services about Father's abuse in 2019. The court precluded him from testifying and denied the interview requests, noting "[t]oday is the day of the trial and that's something I would have wanted to pursue well before now."

**¶14**         In a June 2024 order, the court partially granted the relief requested in Father's June 2023 filings, designating Father as primary residential parent with Mother having parenting time every Wednesday and every other weekend.

**¶15**         This court has jurisdiction over Mother's timely appeal from that June 2024 order pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-2101(A)(2) and -120.21(A)(1).[2]

## DISCUSSION

### I.         The Court Did Not Abuse Its Discretion When It Relied on Alcott's Supervised Parenting Time Observations.

**¶16**         In partially granting the relief Father requested in his June 2023 filings, the court found:

> [Mother's] testimony and Ms. Salazar's testimony simply are not credible. The Court finds that their claims continue to push Mother's false narrative regarding Father's abusive nature . . . [Salazar's] reports of the children in Father's care read like a Charles Dickens' novel . . . . These reports and claims by both Mother and Ms. Salazar stand in stark contrast to what was witnessed by Ms. Alcott.

Mother argues the court's reliance on Alcott's observations violated her due process rights because they were not "subjected to adversary testing at trial, because neither Alcott herself, nor the reports were part of the trial." As a result, Mother argues, she did not have notice and a meaningful opportunity to be heard as to Alcott's observations.

**¶17**         Due process entitles a party advance notice and an opportunity to contest adverse evidence. *Cruz v. Garcia*, 240 Ariz. 233, 236 ¶ 11 (App. 2016) (citing cases). "It is fundamental to due process that a court provide a forum for witness testimony, and that it refrain from resolving

---

[2] The court acknowledges and appreciates the amicus brief filed by Domestic Violence Legal Empowerment and Appeals Project and the National Family Violence Law Center. To the extent the amici ask the court to address issues and arguments the parties did not raise, the court declines that request. *See Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 84 (1981) (amicus curiae may not create, extend or enlarge issues) (citing cases).

matters of credibility on documents alone." *Volk v. Brame*, 235 Ariz. 462, 464 ¶ 2 (App. 2014). This court reviews constitutional issues de novo. *McGovern v. McGovern*, 201 Ariz. 172, 175 ¶ 6 (App. 2001).

**¶18** Alcott supervised Father's and then Mother's parenting time until the first part of 2024. Alcott testified at the March 2023 hearing on Mother's September 2021 petition to modify—which also addressed issues regarding parenting time supervision—and the June 2023 temporary orders hearing, but not at the April 2024 hearing. Alcott's parenting time reports, which had been provided to the court, were not received as exhibits at the April 2024 hearing but were referenced in other witness testimony. Additionally, Mother did not list Alcott's reports as exhibits in her pretrial statement, but stated that she "will introduce" the transcript of the June 2023 hearing at the April 2024 hearing. Ultimately, however, Mother did not introduce that transcript at the hearing, but clearly acknowledged its relevance for the issues being addressed at that hearing.

**¶19** At that same hearing, Salazar testified that she wrote in a March 2024 report that "[i]t is concerning to this supervisor that Father's narrative and the previous supervisor, Ms. Alcott's narrative, do not match the children's current state. . . ." As Mother's witness, Salazar challenged Alcott's observations, putting them at issue. The court also received, without objection, evidence about the June 2023 parenting time exchanges involving Alcott.

**¶20** In addressing the past, present and potential future relationship between parents and the children, one of eleven best interests factors identified in A.R.S. § 25-403(A), the court noted that, after the temporary orders hearing in June 2023, the court reduced Mother's parenting time and required that it be supervised. Considering Mother's claims that the children were suffering and struggling while living almost full-time with Father, the court found her testimony (as well as Salazar's testimony) "simply are not credible." In doing so, the court correctly observed that Alcott supervised parenting time for both parents for a time and that Salazar began supervising Mother's visits in February 2024. In chronologically summarizing the supervision reports for both, the court noted Salazar's reports of the children in Father's care from 2024 contrasted with Alcott's reports from March and August 2023.

**¶21** In considering the evidence received at the April 2024 hearing, including testimony from Mother, Father and Salazar as well as documentary evidence, including Alcott's reports, the June 2024 ruling noted Alcott's observations stood in contrast to testimony by Mother and

Salazar. Absent any notice that the court might rely on Alcott's reports, Mother might not have had a meaningful opportunity to be heard as required by due process. *See Cruz*, 240 Ariz. at 238 ¶ 17. Here, however, the June 2023 temporary orders hearing and the April 2024 final orders hearing both addressed Father's June 2023 filings. Supervision of parenting time was a key issue throughout. Mother acknowledged this by calling Salazar as a witness at the April 2024 hearing. Mother had an opportunity to cross-examine Alcott and challenge her reports at both the March 2023 and the June 2023 hearings. Mother also could have done so again at the April 2024 hearing, if she had called Alcott to testify. Mother, however, did not call Alcott as a witness at the April 2024 hearing. On this record, Mother had advance notice of the relevance of Alcott's observations, had an opportunity to challenge them at the April 2024 hearing and, in fact, actually challenged them at that hearing, even though Alcott did not testify at that hearing.

**¶22**         "Due process errors require reversal only if a party is thereby prejudiced." *Volk*, 235 Ariz. at 470 ¶ 26. In making its finding, the court did not solely rely on Alcott's reports to counter Salazar's and Mother's testimony. The court also weighed testimony from Salazar, which appeared to conflict with information from Alcott and also, at times, from Mother's testimony. The court also considered Father's testimony, which certainly conflicted with Mother's testimony, and the other evidence offered by the parties and received by the court. On this record, Mother has shown no due process denial resulting in prejudice.

## II.      The Court Did Not Abuse Its Discretion When It Considered Salazar's Testimony and Reports.

**¶23**         During the April 2024 evidentiary hearing, Salazar testified:

> It is concerning to this supervisor that Father's narrative and the previous supervisor, Ms. Alcott's narrative, do not match the children's current state, as the children look severely neglected, since they come to the visits starving with very dirty and ripped clothes and smelly, with indication of not having showered in several days. They also seem sick, wear broken glasses, and have [an] embedded orthodontic appliance in their mouth, wear shoes that no longer fit, and overall, are in a very depressive,

scared mental state, and conveying ongoing abuse and neglect.

**¶24** As noted above, the court found that the testimony from Salazar and Mother "simply are not credible." On appeal, Mother argues Salazar was "a disinterested witness with unimpeached and uncontradicted evidence devoid of intrinsic or extrinsic suspicions" and that "the trial court arbitrarily rejected her supervised parenting time reports." Along with being in conflict with Alcott's observations, evidence provided by Salazar was otherwise contradicted at the hearing. During the hearing, Father directly challenged Salazar's evidence, including testifying to refute her factual assertions and to her bias. As noted above, even Mother's testimony contradicted Salazar's observations at times.

**¶25** Mother essentially asks the court to reweigh the superior court's determination of witness credibility and the weight given to conflicting evidence, something this court will not do. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284 ¶ 20 (App. 2019). On this record, Mother has shown no error in the court's credibility determination and weight given to Salazar's evidence.

### III. Mother Has Shown No Abuse of Discretion in the Superior Court Precluding Her Son from a Different Father from Testifying to Impeach Father's Testimony.

**¶26** The court found no credible evidence of domestic violence or child abuse was presented, noting that:

> Mother has alleged domestic violence and child abuse by Father for years. Her reports to police and [the Department of Child Safety] have been unsubstantiated. The Court notes that Father has admitted to hitting [Mother's son from a different father] with a belt, in July of 2020. Father notes that it was discipline and that he was instructed to do so by Mother, which she denies. He adamantly denies any child abuse of the children, and the Court finds that there has been no credible evidence to support Mother's claims.

The court did not permit Mother's minor son from a different father (who Father admitted to hitting with a belt) to testify, noting a blanket rule against minors testifying, the "very sensitive" subject matter of the

testimony and the remoteness of the events. The court also denied a request that he be interviewed by the court in chambers or by Conciliation Services because the request, made during the evidentiary hearing, was untimely. This court reviews the preclusion of a witness from testifying for an abuse of discretion. *See State v. Carlos,* 199 Ariz. 273, 277 ¶ 10 (App. 2001).

¶27        Mother argues the superior court erred because A.R.S. § 12-2202(2) indicates that children 10 years or older who are competent are eligible to testify. Noting the child she wished to call as a witness was almost 18 years old at the time, Mother further argues the superior court erred because "very sensitive subject" is not an enumerated ground to preclude a witness under A.R.S. § 12-2202(2). Mother misreads this statute. Section 12-2202(2) excludes as witnesses in a civil action "[c]hildren under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are to testify, or of relating them truly;" it does not limit the court's discretion to exclude witness testimony on other grounds.

¶28        Mother argues the court erred by failing to make a competency decision under Arizona Rule of Evidence 601. But the record does not indicate that the court precluded the testimony based on the individual's lack of competency. Instead, noting the potential witness' youth, the court noted a policy it had to not allow young witnesses to testify in court, that the subject matter of the testimony was "very sensitive" and the events were too remote.

¶29        Focusing on the topic of the proffered testimony and remoteness, the superior court properly could preclude the testimony under Arizona Rule of Evidence 403 or 611. *See Yauch v. S. Pac. Transp. Co.,* 198 Ariz. 394, 403 ¶ 25 (App. 2000) (noting this court may affirm preclusion of evidence on any ground supported by the record). The evidence was offered to refute Father's testimony that, in 2019, he struck Mother's elder child with a belt, as opposed to striking the child with a belt buckle, or that he did so at Mother's direction. At the hearing, Father testified to hitting the child, disputing whether it was with a belt or a belt buckle and whether Mother told him to do it. Mother testified the child was abused by Father "for a long time." Thus, the undisputed record evidence — including Father's own admission — was that Father had hit the child in 2019 with a belt.

¶30        Mother sought to call the child to try to impeach Father's testimony. Because the undisputed evidence was that Father had hit the child with a belt, and the court heard Mother's testimony that contradicted

Father's testimony, the superior court properly could conclude that the relevance of the child's testimony about the matter was substantially outweighed by a danger of "undue delay, wasting time, or needlessly presenting cumulative evidence." Ariz. R. Evid. 403; *see also State v. Soto-Fong*, 187 Ariz. 186, 199 (1996); Ariz. R. Evid. 611(a) (noting "court should exercise reasonable control" over courtroom proceedings to "make those procedures effective for determining the truth;" "avoid wasting time" and "protect witnesses from harassment or undue embarrassment"). Moreover, "[t]he exclusion of repetitious or cumulative evidence does not require reversal by an appellate court." *State ex rel. La Sota v. Ariz. Licensed Beverage Ass'n, Inc.*, 128 Ariz. 515, 523 (1981); *see also Johnson v. Provoyeur*, 245 Ariz. 239, 244-45 ¶¶ 18-20 (App. 2018) (applying similar approach in family court); Ariz. R. Fam. L.P. 86 ("Unless justice requires otherwise, an error in admitting or excluding evidence . . . is not grounds for . . . vacating, modifying, or otherwise disturbing a judgment or order.").

**¶31**        Finally, Mother has not shown, with supporting authority, that the superior court was required to interview the child in chambers (or that it abused its discretion in declining to do so) or that the court erred in not having the child interviewed by Conciliation Services. That is particularly true where those requests were made during the April 2024 hearing itself, not before. *See* Ariz. R. Evid. 611. On this record, Mother has shown no error in the superior court's exclusion of this testimony.

**IV.    Mother Has Not Shown that Prior Proceedings Tainted the June 2024 Order.**

**¶32**        Mother argues the superior court "sign[ed] the [June 27, 2023] warrant based upon false facts" that "amounted to nothing less than fraud upon the trial court by Father and tainted the entire proceeding." To the extent Mother seeks to challenge the June 27, 2023 warrant, this court lacks appellate jurisdiction to do so. *See Gutierrez v. Fox*, 242 Ariz. 259, 264 ¶ 12 (App. 2017) (special action is proper challenge to warrant); *Frimmel v. Sanders*, 236 Ariz. 232, 235 ¶ 1 (App. 2014) (similar); Ariz. R.P. Spec. Act. 4(c). To the extent Mother argues erroneous or fraudulent evidence in the proceedings leading up to the June 2023 warrant impermissibly tainted the June 2024 order, the record does not support that argument.

**¶33**        The June 2024 order references the June 27, 2023 warrant by stating it "was issued because the children were refusing to go with Father for his parenting time." Mother does not argue this finding was false or based on false evidence. To the contrary, Mother herself concedes that the children refused to go with Father on the dates at issue.

¶34 To the extent Mother argues the proceedings leading up to the June 27, 2023 warrant biased the judge at the April 2024 hearing, Mother knew about those proceedings long before that hearing. She had the opportunity to challenge the findings at the June 30, 2023 temporary orders hearing, where she and Father both testified, and at the April 2024 hearing as well. And, in fact, Mother challenged those findings at the April 2024 hearing, albeit without claiming bias. She did not seek a change of judge based on bias in advance of the April 2024 hearing or otherwise. By waiting until her appeal to press bias, she waived any such issue. *Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC*, 227 Ariz. 382, 386 ¶ 12 (App. 2011) (arguments not raised with the trial court are waived on appeal). Mother has not shown that prior proceedings tainted the June 2024 order.

## CONCLUSION

¶35 The June 2024 order is affirmed.

